## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

---

Justices of the Supreme Court during the Period comprised in
this Volume.

HON. WILLIAM D. SIMPSON, CHIEF JUSTICE.
HON. HENRY McIVER, ASSOCIATE JUSTICE.
HON. SAMUEL McGOWAN, "        "

---

MEETZE v. CHARLOTTE, COLUMBIA & AUGUSTA R. R. CO.

1. Where the report of the referee, including the testimony taken with his conclusions of law and fact, and the exceptions taken to the report, are all submitted to the Circuit Judge, it is not in terms the "Case and Exceptions," required by the code (§ 294), but it is substantially a compliance with the requirements of the law.

2. Where there is a consent order of reference in a law case of all the issues to be heard and determined by the referee, the Circuit Judge has the power to review the referee's findings of fact as well as his conclusions of law, and upon such review to affirm, modify, or reverse them. SIMPSON, C. J., dissenting.

3. Where a party is entitled to a trial by jury the cause cannot be referred without his consent; but his consent to a reference involves his consent to all the incidents of a reference, one of which is that the report of the referee, on exceptions taken, may be reviewed and affirmed, modified, or reversed. SIMPSON, C. J., dissenting.

*Per* SIMPSON, C. J.—

4. Licenses, revocable and irrevocable, considered and defined.

5. Where the license is a power coupled with an interest of a permanent character, it is irrevocable; and if the interest be an interest in land, and the contract be by parol only, the Court of Equity will hold the contract binding, where the licensee has incurred trouble and expense in carrying out such contract.

6. Thus, where a railroad company, for certain privileges, was permitted by parol to construct upon the plaintiff's land a dam, a canal, and a water-wheel, for the purpose of keeping its tank supplied with water, the license was irrevocable and might be enforced in equity notwithstanding the statute of frauds.

7. And this special contract being valid and therefore of force, the plaintiff, upon the withdrawal by the railroad company of such privileges, could not bring action for the value of the use and occupation of the land, but only for damages for breach of the special contract.

Before ALDRICH, J., Lexington, September, 1883.

This was an action by Henry A. Meetze against the Charlotte, Columbia & Augusta Railroad Company, commenced in August, 1881. On February 22, 1883, Judge Hudson passed the following consent order: "*Ordered*, That all the issues arising in this cause be and they are hereby referred to William J. Assmann, Esquire, to hear and determine the same." The reference was held in August, and the report filed in September, of the same year. Upon exceptions to this report, taken by the defendant, the cause was heard before his honor, Judge Aldrich, who subsequently filed the following decree:

The report and exceptions were called for a hearing at the fall term of Lexington court, when, by the joint request of the attorneys for the plaintiff and defendant, I made the following entry in the calendar: "To be heard in Columbia by agreement of counsel made in open court." Subsequently, at the fall term of the court for Richland, the case was called for a hearing.

*In limine*, objection was made that there had been no "*case settled*," and I could not hear the cause. I ruled that the defendant, having furnished the court with all the papers in the cause copied by the referee, who is also the clerk, this was sufficient; that in all cases where a "case" is necessary the party may waive

a "case" and present all the papers, provided, as in this cause, the testimony and other proceedings are in writing.

The pleadings were read by the plaintiff's attorney at the request of the attorney for the defendant, including the testimony and all the papers in the cause. After the reading the plaintiff objected to my jurisdiction, on the ground that the remedy of the defendant was to appeal directly to the Supreme Court, and that the findings of the referee had the force and effect of a special verdict which could not be reviewed by the Circuit Judge. I ruled that the appeal from the referee to the Supreme Court was in accordance with the New York practice, which clothed the referee with the power of a court; that this could not be recognized under our constitution, which vested all judicial power in the courts therein named; that I had never heard of a judgment being entered in our State upon a referred report *in invitum*, nor of the Supreme Court hearing an appeal directly from a referee; that whether this court would or would not have the power to pass upon a "special verdict," the finding here was certainly not a special verdict, for it not only reported the testimony but also the referee's deductions therefrom and his findings of law; that what the referee called findings of fact were for the most part *mixed findings of law and fact*, hence his report could not be regarded as a "special verdict" without violating the definition given in the code, to wit: "A special verdict is that by which the jury find the *facts only*, leaving the judgment to the court." I further held that those sections of the code copied from the New York code, and which gave power to enter up judgment upon the report, or appeal directly therefrom, had been, in whole or in part, stricken out before the order of reference in this case was made (§§ 296, 302, code of 1870). The attorneys in the cause were directed to proceed with the argument.

During the argument the point was made how far this court could go in consideration of the report and exceptions, it being an action at law referred to a referee with power to pass upon all the issues. In my opinion, there being only two modes of trial in this court, by the court with a jury, and by the court without a jury, the consent order of a reference of all the issues to a referee was a waiver of a trial by a jury, and a submission

of all the issues of law and fact decided by the court, the same having been first passed upon by the referee, who should, as in this cause he states he does, make his report "to the honorable the Court of Common Pleas." It then becomes the province of the court to take the testimony as reported, and to give due consideration to the referee's findings, without being bound by any. When the referee has found a matter of fact, purely and simply, not a deduction from facts proved, or a conclusion from applying the law to a fact proved, or what is called a mixed finding, such as a finding of "due diligence," "reasonable notice," or "negligence," as I have frequently said, I will, without some very good reason exists, to overrule him, sanction his findings.

I now proceed to consider the case on its merits, as presented by the referee's report and all the papers in the cause. In 1874 the defendant railroad, at its Lexington station, with the consent of the plaintiff, built a dam to increase the head of water in a stream at that place, near its track, to run a water-wheel to force water into a tank, and also dug a ditch, some 150 yards long, to carry off the water. A portion of this dam, the whole length of the ditch, and the water-wheel are on the plaintiff's land. The defendants expended money in that construction. The dam was constructed, the ditch dug, the water-wheel built, and the tank placed with the knowledge and consent of the plaintiff, he then being the agent and local attorney of the defendant. The defendant has been using this water-power up to and since action brought.

Without doubt this tank has been of great benefit to the railroad company. It has furnished a never-failing supply of water to its engines, and saved the expense of employing a pump hand at this point. The plaintiff, in his testimony, says he was induced to grant this privilege on his land because as depot agent and local attorney he was permitted to ride on the defendant's trains free of charge and receive family supplies at half rates, a privilege he had been enjoying before the works were constructed and which all of the depot agents enjoyed. I see nowhere in the evidence that the plaintiff claimed these privileges in consideration of the water-power, or that he has ever even alluded to it until his letter to Mr. President Palmer. This employment as

local attorney was a separate engagement, for which he says he was liberally compensated, and doubtless produced good will toward the defendant. This employment of depot agent the plaintiff terminated himself, and his only complaint now is that the free pass has been withheld.

The evidence discloses that this free pass has been extended, except for a short time, to Mr. Meetze as a member of the legislature ; but he says that he did not willingly receive them in that capacity. Great light is thrown upon this transaction, I think, in a letter written by plaintiff, which I give in full :

"STATE OF SOUTH CAROLINA, SENATE CHAMBER,
"COLUMBIA, June 13, 1877.
"*Col. J. B. Palmer.*

"MY DEAR SIR : Your favor in relation to the ticket sent me on 3d May, and not received, and the request to make out a statement of railroad fare I was compelled to pay during the last session of the legislature, duly received, and in reply beg leave to decline to make out any bill as you request. I think the whole system wrong, and my only regret is that I have ever contributed to it in any way. For your kind proposition to refund, I tender you my thanks. There is one subject to which I beg to call your attention, and one which I think should not properly be classed under *dead-head.* The company has, for some two years or more, been using my water-power to drive their pump at this station. It is true the works stand on the right of way which I gave the road, but they never could have been successfully worked but for the privilege I gave the company to run a ditch through my land in order to obtain the necessary fall. Now, I feel that justice requires some consideration for this privilege.

"Very truly and sincerely,
"HENRY A. MEETZE."

This letter, clear in its terms, shows that, whatever motive influenced the plaintiff, the privilege granted was a gift. What means the acquiescence from the date of this letter to the commencement of this action ? At the time of the gift the feeling moving the donor was public spirit, the convenience to the State

and his immediate locality, and the enhanced value of property along the line. Besides, he accepted the free pass, did not make a claim for compensation, and allowed the defendant railroad to continue the use of the works and the water until the suit was instituted. I cannot resist the conclusion that the idea of compensation did not arise in the mind of the plaintiff until after he had become offended with Mr. President Haskell, and it is a well-received principle that what is intended as a gift cannot be converted into a charge.

It was contended by the plaintiff that this is a mere license that can be revoked at the will of the plaintiff; by the defendant that it is an easement not revocable. In my view of the case it makes no difference whether it is an easement or a license. As a principle of right, reason, justice, and equity, I hold that where a proprietor stands by and not only permits but consents to the erection of valuable structures on his land, he cannot come in after several years of permissive use and claim compensation. In this State, and especially under · our present practice, this court has the power to consider an equitable defence. The expenditure of work, material, and money, as in this case, takes the case out of the statute of frauds. *Trammell* v. *Trammell,* 11 *Rich.,* 472, 474; 2 *Am. Lead. Cas.,* 546 to 587.

Again, the nature of this privilege, shown by the plaintiff to be necessary for the use of the defendant at this point, and having been used by the defendant railroad from 1874 to time of action, and originating in the consent and gift of the plaintiff, he is precluded from this action by *Gen. Stat.,* § 1554; 13 *Fed. Rep.,* 412.

It has been repeatedly held that a letter, or any other writing, identifying the privilege, when taken in connection with the structures, the proceedings, and the proof, will take the case out of the statute of frauds. That it is signed by only one party, and has been written subsequently, makes no difference if the other has acted upon it. *Rob. Frauds,* 105, 107; 1 *Chit. Cont.,* 90, note on p. 95, note p. 96.

It is well understood that, while I am in favor, as a matter of right and policy, of holding railroads and all other corporations to the strictest accountability, and restraining them from all

encroachments on the rights of the citizens by awarding full compensation when these rights are invaded, yet so great is the prejudice against them, and so prevalent the idea that a railroad must be made to pay for any privilege or injury, no matter how the former is acquired or the latter occasioned, without regard to the great benefits it has conferred to the section of country through which it runs, that I feel the necessity of protecting them from some of the extravagant demands set up, and with which the public too often sympathize. A railroad corporation stands in court like any other suitor, and while it is held to the severest tests and the most strict compliance with the law, it must be protected in its rights like any other citizen. I adjudge that the plaintiff is not entitled to damages.

Before dismissing the complaint, however, it may be proper to say that if I was of the opinion that the plaintiff is entitled to damages, they could not be measured by the benefit arising to the defendant railroad, but by the injury done to the plaintiff, which he seems to compute is the value of the free pass withheld.

The defendant has tendered a free pass to the plaintiff as an offering for favors received, and while I do not so adjudge, I think it not out of place to suggest that as the defendant railroad is enjoying this water privilege by the consent of the plaintiff, that a free pass be again offered him from year to year during his life, or so long as the defendant continues to use the water-power.

Let the complaint be dismissed and the plaintiff pay the costs of this action.

The plaintiff appealed upon the following exceptions:

1. That his honor, the Circuit Judge, erred in ruling that in reviewing the report of the referee it was not necessary to have a case settled.

2. That his honor erred in ruling that the defendant, having furnished the court with all the papers in the cause copied by the referee, who is also the clerk, it was sufficient.

3. That his honor erred in ruling that the consent order of reference of all the issues was a waiver of a trial by a jury, and a submission of all the issues of law and fact decided by the court, the same having been first passed upon by the referee.

4. That his honor erred in holding that the privilege granted was a gift.

5. That his honor erred in holding that the idea of compensation did not arise in the mind of plaintiff until after he had become offended with President Haskell.

6. That his honor erred in holding that where a proprietor stands by and not only permits, but consents to the erection of valuable structures on his land, he cannot come in after several years of permissive use and claim compensation.

7. That his honor erred in holding that the expenditure of work, material, and money, as in this case, takes the case out of the statute of frauds.

8. That his honor erred in holding that the plaintiff was precluded from obtaining the relief sought under § 1550 of the General Statutes.

9. That his honor erred in holding that a letter, or any other writing identifying the privilege, when taken in connection with the structures, the proceedings, and the proof, will take the case out of the statute of frauds; and that it was signed by only one party, and has been written subsequently, makes no difference if the other has acted upon it.

10. That his honor erred in adjudging that the plaintiff was not entitled to damages.

11. That his honor erred in dismissing the complaint.

*Messrs. Clark· & Muller*, for appellant.

*Mr. J. H. Rion*, contra.

April 22, 1885.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    The complaint filed in this action alleges that in 1874 the appellant, in consideration of the privilege of at all times travelling upon the cars of the defendant free of charge and for certain other valuable considerations thereunto him moving, permitted the defendant to enter upon his lands located along the line of defendant's road, and there to erect and build a certain dam and water-wheel, and to excavate a certain

canal for the purposes of running said water-wheel and supplying the water-tank of defendant with water; that the defendant continued to use these works for the purpose aforesaid until about March 1, 1880, having during this time extended the privileges aforesaid to the plaintiff; that about March 1, 1880, these privileges were discontinued, and the defendant has since refused to perform its part of the contract or in any manner to remunerate the plaintiff, although it has continued to use the water-wheel, canal, &c. Wherefore he demands the sum of $225 for the use and occupation of the said land and the use and occupation of the water-wheel, canal, &c., from March 1, 1880, to August 1, 1881, the time of the commencement of the action, and for costs.

The answer of the defendant denied the allegations in the complaint except so far that it admitted the construction of the water-works on the plaintiff's land, and also the privileges extended to the plaintiff as claimed in the complaint; but it averred as to these privileges that they were not extended in consideration of the use of said water-works, but were extended to the plaintiff as one of the agents of the company during the years 1874 and 1875, and during the years 1877, 1878, and 1879 as State senator, and so expressed in the free pass given, but that during the year 1876, when the plaintiff was neither agent nor State senator, no free pass was given; and it further averred that the permission given to the defendant to erect the works mentioned was given because of the public spirit and kindly disposition of the plaintiff to the road, gratuitously, like the right of way had been given by various persons, and was intended for defendant to enjoy the privilege to the same extent and for the same period as such right of way. The answer also admitted that the defendant had continued the use of the works since 1874, and, while not admitting the plaintiff's right thereto, the defendant tendered a free pass for the year 1880, to be continued from year to year so long as the defendant used said works, which was refused by the plaintiff.

The answer also set up a counter-claim of $162.12 balance in plaintiff's hands as agent. The plaintiff replied to the counter-claim, asserting that he had paid all in his hands, and denying

that he was indebted to the defendant in any amount whatsoever.[1]

Upon order of Judge Hudson, on motion of plaintiff's counsel and by the consent of defendant's counsel, the cause with all issues arising in it was referred to William J. Assmann, Esq., to be by him heard and determined.

The referee found as conclusions of fact: That from the spring of 1874 to March 31, 1880, the defendant used the water-works for supplying its tank, with the consent of the plaintiff; that the consideration which moved the plaintiff to this consent was certain privileges extended to him by the company, principally that of travelling free upon the road, which privileges were allowed during this time except during the winter of 1877, when he was required to pay the regular fare in travelling, and were entirely discontinued after March, 1880; that thereupon the plaintiff lodged complaint, and demanded his right to travel free of charge; that this demand was ignored until December, when an annual pass was tendered, which the plaintiff declined to accept; that since March 31, 1880, the defendant has used the water privilege without the consent of the plaintiff and without paying compensation therefor; and that the value of the use and occupation of the lands of the plaintiff is reasonably worth $150 per annum.

As conclusions of law, he found (1) that the privilege granted the defendant was a "license" and not an "easement;" that this license was revocable at the will of the licenser; that said license was revoked on and after April 1, 1880. (2) That after said revocation, the use and occupation was upon the implied promise to pay what it was reasonably worth. He therefore adjudged that the plaintiff recover the sum of $200 and costs.

These conclusions, with the testimony upon which they were based, were reported to the court, with numerous exceptions from the defendant. This report, including the testimony and exceptions, came up before his honor, Judge Aldrich, who—holding that the consent order of reference of all the issues in the case was a waiver of a jury trial, to which the parties were entitled in the first instance, it being a case at law, and that this was also a submission of all the issues to the court, the same having first

[1] At the reference, defendant withdrew its counter-claim, and stated that it had been put in under a misapprehension.—REPORTER.

been passed upon by the referee, and by him reported to the court, when it was the province of the court, after giving due consideration to the findings of the referee without being bound by any, to decide said issues, both of fact and law, for himself— proceeded to consider the case on its merits as presented by the report and all the papers in the cause, and finding that the use of the water privilege by the defendant was granted as a gift, whatever may have been plaintiff's motive in allowing it, and that whether it should be regarded as a license or an easement, yet having been granted, and the defendant in consequence of such grant having gone to considerable expense to make it useful, he held that the plaintiff could not come in after several years of permissive use and claim compensation. He further held that, by virtue of a certain letter of plaintiff, the statute of frauds did not apply ; and further, that even if the plaintiff was entitled to damages, they could not be measured by the benefit arising to the defendant from the use of the water, but by the injury done to the plaintiff in refusing him the free pass and other privileges which he had enjoyed. He therefore dismissed the complaint with costs.

The appeal raises the following questions: 1st. Whether the Circuit Judge could review the report of the referee without a case and exceptions, although all the papers which were before the referee were submitted to him. 2nd. Whether in a case like this, it being a case at law, the Circuit Judge could hear it on its merits, disregarding the findings of the referee as to the facts ; and whether he was not bound by the facts as found, having jurisdiction only as to the question of law involved, with power to grant a new trial upon the facts, for the reasons for which under the law a new trial may be granted in jury cases. 3rd. Whether his honor erred in holding the privilege granted to the defendant was a gift; and also in holding that plaintiff, having stood by and permitted the erection of valuable structures by the defendant, could not come in after several years of permissive use and claim compensation. 4th. Whether his honor erred in holding that the facts of this case took it out of the statute of frauds ; and also in holding that plaintiff was precluded from relief by section 1554 of General Statutes. 5th. Whether his honor

erred in holding that plaintiff was not entitled to damages and in dismissing the complaint.

The two first questions involve questions of practice, and their solution depends upon the interpretation which is to be given to the sections of the code bearing upon these points. These sections are mainly sections 290 and 294. Section 294, after providing how trials by a referee shall be conducted, provides the manner of reporting conclusions, directing that the facts found and the conclusions of law must be stated separately, and the decision given, and then it provides that this decision may be excepted to and reviewed in "like manner" and with "like effect" in all respects as in cases of appeal under section 290, and the referee may in like manner settle a case or exceptions.

Section 290, which section 294 refers to and incorporates, has two subdivisions. In the first of these it provides that for the purpose of appeal either party may except to a decision on a matter of law arising upon a trial within ten days after written notice of the filing of the decision, order, or decree, as provided in sections 344 and 345. So that where a party intends to except to the report of a referee who has tried the case on a matter of law, he must do so within ten days as above. Subdivision 2 provides that if either party desires a review upon the evidence appearing on the trial, either of a question of fact or of law, he may at any time within ten days after notice of the judgment, or within such time as may be prescribed by the rules of the court, make a case or exceptions in "like manner" as upon a jury trial, except that the judge, in settling the case, must briefly specify the facts found by him and his conclusions of law. Now, in conforming to this subdivision, so that the report of the referee may be reviewed by the Circuit Judge, it seems that a case or exceptions must be made within ten days, &c., in like manner as upon a jury trial, in which the referee, in settling the case, must briefly specify the facts found by him, and also his conclusions of law. These requirements were not observed formally in this case, but all the papers, including the report of the referee, the testimony taken, the facts found, the conclusions of law, and the exceptions, were submitted to the Circuit Judge. This we think was a substantial compliance with the demands of

this section. Nothing seems to have been left out that could have been brought up in a more exact and formal observance of the rule. So that while it would be better to conform in terms, yet for the reasons given the failure in this instance should not be held fatal.

The second question is surrounded with greater difficulties, which are the more perplexing for the reason that we have no case in our reports to which we can look, and upon which we can stand as authority, as to the full import of the question raised, though there are several, to be cited hereafter, which seem to lead in the direction of the conclusion which we have reached. We must again look up the sections of the code *supra*, which are also applicable to this question, but before doing so it may be best to consider briefly the nature of trials in civil causes, and the circumstances and authority under which trials by referees may be had. A trial is defined to be a "judicial examination of the issues between the parties, whether they be issues of fact or of law." *Code*, § 273. Issues of law must be tried by the court, as also cases in chancery, unless they be referred as provided in chapter 5 of title 8, part II., *Code*, § 274. Issues of fact in actions for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless such trial be waived, as provided in section 288, or a reference be ordered as in section 274. Every other issue is triable by the court, which, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury, or may refer it as provided in sections 292 and 293.

It will be seen from these sections of the code, which constitute our chart, that there are two general modes of trial of causes provided by the law, without reference to the consent or otherwise of the parties litigant, *i. e.*, trials by the court and trials by a jury. To the court belong all issues of law and all cases in chancery, with the power on his part to order a reference for his own enlightenment, not, however, to be controlling on him. To the jury belong all questions of fact in cases at law, for the recovery of money only, or of any specific real or personal property. But either of these modes of trial may be changed by the action of the parties if they choose to do so. For instance, a

jury trial may be waived in favor of a trial by the court, as provided in chapter 6, section 288. Or all issues, whether of fact or law, in any action may be taken from the jury or the court and referred to a referee upon the written consent of the parties (§ 292), and the court may, even without the consent of the parties in certain cases, direct a reference (§ 293). It appears, then, that a party has the right to demand a trial by the court, or the jury, as the case may require, and that he cannot be deprived of his right, unless by his own consent, except in the few cases referred to in section 293, where the judge has the power to refer even without the consent of the parties. Yet he may consent that a case at law may be tried by the court, or that all issues in any case may be tried by a referee.

Now, the case at bar was originally a case at law. It was an action for the recovery of money only, demanded for an alleged breach of contract. It was, therefore, a jury case, pure and simple. The parties, however, consented that all the issues involved might be tried by a referee, and it was so ordered. The question now arises, what was the effect of this consent? Did it involve the further consent that, after the referee had heard and tried the case, his findings of fact might be disregarded by the Circuit Court, and the case be reheard and tried by the Circuit Judge upon its merits, and upon the evidence reported by the referee? There can be no doubt that parties may waive a jury trial, either in favor of a trial by the court, or by a referee (*Code*, §§ 288 and 292); but the question is, where a jury trial has been waived and a referee trial elected, can such a waiver, under any circumstances, carry the trial upon the merits back to the court without the consent of the parties? This must depend upon the construction which should be given to section 294, in connection with section 290, *supra*, as applicable to this precise point.

Section 294, as we have already seen, provides for a review of the decisions of referees in all cases where that mode of trial is adopted under section 292, until the recent amendment in the general statutes. Judgment might be entered upon the decision of the referee when he had been substituted by the parties at the trial court, with the right of appeal upon exceptions—to what court in this State it was never decided, but to the general

term in New York. This last provision has been, however, stricken out of our code (*Gen. Stat.*), and as it now stands, the decision of the referee is subject to review by the Circuit Court upon a case or exceptions. But what is the extent of the power of the Circuit Court in this review? Section 294 declares that it shall be had in like manner and with like effect in all respects as in cases of appeal under section 290. Section 290 provides the manner of appeal to this court in jury cases tried by the court upon a waiver of a jury trial. It does not say in terms what the effect shall be, but we know that in appeals to this court in cases at law when tried by the court, questions of law can only be brought up by such appeal. The facts cannot be reviewed.

It is true, subdivision 2 of section 290 does say that either party desiring a review upon the evidence appearing on the trial, either of the questions of fact or of law, may make a case or exceptions in like manner as upon a jury trial. What this means exactly we are at a loss to conceive, but it certainly could not have meant that this court should have the power to review the facts as well as the law in a case at law, when the case had been tried by the court. Because the constitution has invested this court in cases at law with the power only to correct errors of law, which, by implication at least, inhibits the power to correct errors of fact in such cases. This being so, the legislature could not enlarge this power. We do not know what could have been the intent of this expression then, except, perhaps, it was to give power to have the facts reviewed in such cases where the facts, according to the law and practice, were reviewable on appeal, *i. e.*, cases in chancery.

This construction would confine the Circuit Court, in the review of the decisions of referees where the parties had elected that mode of trial, to questions of law in cases at law, but with power in chancery cases to correct errors, both of fact and law. It would make the practice uniform and symmetrical, and would conform to the intent of parties in selecting their own mode of trial. And we think this is the proper construction of section 294, where it provides that the decisions of the referee shall be subject to review in like manner and with like effect as appeal cases. We are of opinion, therefore, that his honor erred in

considering any other questions below, except the legal ones presented in the exceptions, except that he might have granted a new trial if in his judgment the facts warranted such an order.

The prominent cases in our own reports, where this question has been somewhat discussed as to chancery cases, are, *Flinn & Hart* v. *Brown*, 6 *S. C.*, 209 ; *Thorpe* v. *Thorpe*, 12 *Id.*, 154 ; *Gadsden* v. *Whaley*, 9 *Id.*, 147. In the first case, which was an equity case, all of the issues were referred under section 270 to a jury, and the court held that the verdict was not necessarily to be accepted as the conclusion which was to govern and control the case, but that the judgment in such a case must be the result of the conclusions of the judge, both on the law and the facts—the court saying : "That it was entirely within the power of the judge to have disregarded the verdict and decreed in the face of it." This case seems directly in point as to chancery. case because this case was referred by virtue of the provisions of the code under discussion. The cases at law are, *Ross* v. *Linder*, 18 *S. C.*, 605 ; *Griffin* v. *Griffin*, 20 *Id.*, 486 ; and *Caulfield* v. *Charleston*, 19 *Id.*, 600. In the last case it was said that the report of a referee as to the facts in a case at law has the force and effect of a special verdict.

We think, therefore, that his honor, the Circuit Judge, transcended his powers when he found as a fact that the privilege extended to the defendant was a gift, in face of the fact as found by the referee that it was based upon a consideration and was the result of contract ; and it being error in the judge thus to reverse this finding, the principle of law which he applied to the fact when reversed was not of force, however correct it may be as a general principle.

Coming next to the other questions presented, let us inquire first, what is the precise cause of action upon which the plaintiff has come into court. In looking at the complaint, we find that the greater part of it is taken up in detailing a special contract between himself and the defendant ; and near the close thereof a breach is alleged in these words : "That on or about the first day of March, 1880, the defendant discontinued the accommodations previously extended, and has ever since refused to perform its part of the contract." But no damages are demanded for

this breach; on the contrary, just at this point it is alleged that, after such discontinuance and failure to perform its part of the contract, the defendant continued the use of the works, without compensation, which use the plaintiff then claims is worth the sum of $350 per annum, and judgment is demanded for the value of such continued use and occupation. We conclude from this that the action is upon an implied contract, and not upon the special contract alleged to have been made between the parties. The referee certainly so understood it, and such we suppose was the understanding of the plaintiff. Now the question arises, can an action be maintained upon a *quantum meruit*, or implied contract, when the proof shows the presence of a specific contract?

It is said, however, that the specific contract was a mere license, revocable in its nature; that it was revoked; and that since said revocation the implied contract has sprung into existence, and in that view the action is maintainable. We have looked into many cases on the subject of "licenses" and "easements" without reaching a very definite and satisfactory conclusion as to the precise distinction between them. They seem often to shade into each other, and the line of demarcation between them is so indistinct that neither the cases in which they have been discussed nor the text-books afford any well-defined rule as a test. Without attempting here to establish such a test for general application, the following general principles, we think, may be extracted from reliable authorities. *Prince* v. *Case*, and *Perick* v. *Kern*, discussed in 2 *Am. Lead. Cas.* (Hare & Wall.), 736, and the cases there cited; 2 *Story Eq.*, 60, § 761.

A general definition of a "license" merely is that it is an authority, a power, to do some act, derived from one who can give such power, and its effect is to make the act lawful which, but for the power granted, would be unlawful. Such a license (in its implied form) is essentially revocable, both before the act is performed or afterwards. An illustration of a power of this kind would be where one was authorized to hunt in another's park, or to cut down another's timber. If the authority went no further than to do acts of this kind, it is a mere license and is revocable at the will of the licenser. But the license may be coupled with an interest in the licensee beyond the mere execu-

tion of the power; as, for instance, in the example above of hunting in another's park, the license may extend to a vested right in the game killed by the licensee, and then the license would not be revocable so as to deprive the licensee of his property. It might be revocable so as to prevent a continuation of the license, if the interest beyond the license was of a temporary character, as in the case referred to, though the license could not be revoked, after the game was killed, so as to deprive the licensee from taking possession, yet it could be revoked so as to prevent a repetition or continuation of the hunting. But if the interest over and above the license is of a permanent character, and such as could not be enjoyed except by a continuance of the license, and that interest has become legally vested in the licensee, then the license is irrevocable, because the interest to which it is a necessary incident is irrevocable. A license then may consist of two parts—first, a mere power; and second, a transfer of an interest to the licensee, permanent or otherwise, to which the power is a necessary incident. A license of the first kind is always revocable, but whether the second kind is so or not depends upon the fact whether the interest is legally vested and whether it is permanent and continuing.

In the case at bar, the license is of the latter kind. It is a power coupled with an interest. The power consisted in the defendant being allowed by the plaintiff to enter upon his land to dig the canal, to build the dam, and to erect the water-wheel, all of which acts would have been unlawful without the license. And if the license had halted at this point, while the license would have been a protection against an action of trespass, yet it could have been revoked either before the works had been erected or afterwards. But the license did not stop at that point. The complaint states that in consideration of certain privileges, &c., extended to him, he permitted (licensed) the defendant to enter upon his lands and erect these works, for the purpose of supplying defendant's tank with water. Here was an interest, an easement, beyond the mere authority to erect the works, to wit, the purpose of the erection. They were to be used by the defendant, and they were so used.

Now, according to the principles stated above, where the license

covers not only a power but an interest, whether it can be re-
voked or not depends upon the character of the interest and
whether according to law the interest has become vested. The
difficulty in these cases is where the interest is an interest in
lands. Because, in addition to the license, before an interest in
lands can become vested in law, certain technical rules, so to
speak, must be complied with, as, for instance, lands cannot be
conveyed at law without an instrument executed under seal, &c.,
and the statute of frauds interposes too and declares that the
sale of no interest in lands, &c., shall extend beyond a mere
estate at will, unless in writing; and it further provides that no
action shall be brought upon such sale, unless in writing, &c.
When a question arises, then, in a law court as to an interest in
land, unless these rules have been complied with, the objection is
fatal. In the equity courts, however, it has been held that where
the license as to an interest in land, though verbal, has been so
far executed that its revocation would work a great wrong in the
licensee, the chancery courts will hold it binding and irrevocable,
and especially where the licensee, relying on the contract, has
incurred considerable expense and trouble in carrying it out.
Where the licenser stands by, permits and encourages the trans-
action as a sale, and allows the licensee to go to expense upon
the faith of a sale or vested interest, he will be estopped in equity
from denying it, and it may be specifically enforced.

Now, applying these principles to the case at bar, it is clear
that the original contract between these parties, as alleged in the
complaint and as found by the referee, was more than a mere
license revocable at the will of the plaintiff. Because it em-
braced not only a power to do certain acts, but the exercise of
this power was intended to create, and did create, an interest to
be enjoyed and used by the defendant. This interest was attached
to the railroad of the defendant, which was a permanent struc-
ture. It was intended to supply this permanent structure with
water, a continuous want, and therefore we must conclude that
the interest was understood to be of a permanent character.

It was, however, an interest in land, and not in writing, sim-
ply verbal, and the plaintiff contends that therefore it was nothing
more than an estate at will under the statute of frauds, and on

that account was still revocable.   This position of the plaintiff
would be entirely correct, under the statute of frauds, in an ordi-
nary case of verbal contract, for the sale of an interest, certain
or uncertain, in lands in a law court; but we think in this case,
before a court combining both law and equity jurisdiction, under
the equitable principles referred to above, that the canal, the dam,
and the water-wheel, erected at considerable expense by the
defendant, with the knowledge and consent of the plaintiff, con-
stitute a complete bar to the interposition of the statute, which
places the contract beyond the reach of revocation.

If this be the correct view of the case, then the special con-
tract between the parties is still of force, and the plaintiff's suit
should have been based on that as his cause of action, founding
his claim for damages on its breach, and not for the value of the
use and occupation of the premises.

It is the judgment of this court that the judgment of the Cir-
cuit Court be affirmed.

MR. JUSTICE MCIVER.   In this case I concur in the result,
but I cannot assent to the doctrine that a Circuit Judge has no
power to review and reverse a referee's findings of fact in a law
case.   On the contrary, in my judgment, it is his duty to do so
when a case proper for that result is made.   Even under the old
code it always seemed to me a misuse of terms to speak of a
trial by referees.   A trial is defined as "the judicial examination
of the issues between the parties, whether they be issues of law
or fact."   *Old Code*, § 275; *New Code*, § 273.   The word
"judicial" implies the action of a court, or some agency thereof
under its direction.   Hence there is no impropriety in speaking
of a trial by jury, for that is conducted in the presence and
under the direction of the court, and the judgment is entered on
the verdict by the direction of the court, either express or im-
plied.   A referee, however, is not a court.   He is not mentioned
among the several courts provided for in the constitution, nor
among those established by the legislature under the authority of
the constitution.   See *Code*, § 9, where the several courts are
mentioned.   The Circuit Court has no authority to delegate its
powers to a referee.   It can only use him as an agency, or as a

part of its machinery to facilitate the disposition by the court of such business as may be brought before it. But it cannot invest him with power to determine any issues, either of law or fact, except subject to its supervision and review.

Hence I always believed that, notwithstanding the somewhat equivocal language of section 296 of the old code, no judgment could be entered upon the report of a referee until it was confirmed by the Circuit Court, and such I understand to have been the practice even under the old code. In the case of *Kirkland* v. *Cureton* (4 *S. C.*, 122), which is sometimes cited in opposition to this view, it will be found by reference to the last paragraph on page 124, that the judgment was entered on the report of the referee "by order of the court," and the appeal was from the judgment so entered. So that this case confirms my view as to the prevailing practice. But the question now presented arises under the new code in which the language which was supposed to give authority for the entry of a judgment on the report of a referee, without any confirmation by the court, has been omitted, evidently with the intention of abrogating such provision, and must be determined by the provisions of the present code.

Section 294, in speaking of referees and masters to whom the issues in an action have been referred, declares : "They must state the facts found, and the conclusions of law separately ; and their decision must be given, and may be excepted to and reviewed in like manner and with like effect in all respects as in cases of appeal under section 290 ; and they may in like manner settle a case or exceptions. When the reference is to report the facts, the report shall have the effect of a special verdict. When the case shall have been heard and decided upon the report of the referee and exceptions, the decision may be reviewed on appeal to the Supreme Court." It is clear from this language that the referee is required to report, not merely the general conclusion at which he has arrived, as in case of a jury, but he must report separately the facts and his conclusions of law therefrom ; and his decision, which must necessarily be the combined result of his findings of fact and law, "may be excepted to and reviewed." By what court is not expressly stated, but it is manifest from the other portions of the section that the Circuit Court

is intended, and not the Supreme Court; for the provision at the end of the section that the case, after being heard and decided upon the report and exceptions, may be reviewed on appeal to the Supreme Court, furnishes conclusive evidence that the intention was that the report and exceptions should be heard by the Circuit Court; and this, as I understand, is not controverted.

Now, if the section had stopped at the words last quoted, would it not necessarily follow that the permission to except to and review the decision of the referee, compounded of findings of fact as well as of law, involved the right to review questions of fact as well as law? But the section does not stop there, but goes on to provide the manner in which such decision may be excepted to and reviewed, "in like manner, and with like effect in all respects, as in cases of appeal under section 290." This is precisely the same as if the language of section 290 had been incorporated in the section. Turning to that section we find the following language: Subdivision I. "For the purpose of an appeal, either party may except to a decision on a matter of law arising upon such trial within ten days after written notice of the filing of the decision," &c. Subdivision II. "And either party desiring a review upon the evidence appearing on the trial, either of the questions of fact or of law, may, at any time within ten days after notice of the judgment, or within such time as may be prescribed by the rules of court, make a case or exceptions in like manner as upon a trial by jury, except that the judge, in settling the case, must briefly specify the facts found by him and his conclusions of law."

Now, if this language be incorporated into section 294, that section would then read: "Their decision (that is, referees') must be given, and may be excepted to and reviewed in like manner, and with like effect, in all respects, as in cases of appeal under section 290, that is to say: 1. Either party may except to a decision on a matter of law arising upon such trial within ten days after written notice of the filing of the decision.  *  *  * 2. And either party desiring a review upon the evidence appearing on the trial, either of questions of fact or of law, may, at any time within ten days after notice of the judgment," &c. Clearly if the section read in this way, as it practically does,

there could be no doubt that the report of a referee could be excepted to and reviewed for error in his findings of fact as well as of law, for it is distinctly, and in terms, provided for. It seems to me clear, therefore, that the Circuit Court has jurisdiction to review the findings of fact as well as of law by a referee.

But it is contended that this power of review, so far as findings of fact are concerned, is limited to the ordering of a new trial, and does not warrant the reversal of such findings. It being conceded, as I understand, that the power to review embraces the power to reverse findings of law, I am unable to perceive any reason why the power to review does not likewise embrace the power to reverse findings of fact. The power to review both of these classes of findings is given in the same section, and practically in the same language; and not finding in the section any distinction between them in respect to the extent of the power conferred, I am unable to discover any warrant for such distinction. But in addition to this, so far as I have been able to discover, the Circuit Court has not been invested with power to grant new trials, except in cases tried by a jury (*Gen. Stat.*, §§ 2113, 2652), and in the absence of any such grant of power in a case tried otherwise than by a jury, the power to review must necessarily include the power to reverse, affirm, or modify.

Indeed, it seems to me that the power to order a new trial in a case which had been referred to a referee would lead to singular, if not unfortunate, results. Before whom would the new trial be had, the same referee or another? If before the same referee, is he to surrender his deliberate judgment at the dictation of the Circuit Court? If he is not, then no practical good would result from the new trial, but simply delay and additional expense. If he adheres to his original opinion, can a new trial be ordered *toties quoties?* If before another referee (which, however, could not be without the consent of the parties), and he should reach the same conclusion as the first, how often would the process be repeated? These, and other considerations which might be mentioned, may afford the reason why the power to grant new trials has only been given in cases tried by a jury, the constituent members of which are changed at every court. But

be that as it may, as I am unable to find any authority for a Circuit Court to order a new trial, except in a case which has been tried by a jury, I am forced to the conclusion that the power undoubtedly vested in a Circuit Judge to review the findings as well of fact as of law, necessarily includes the power to reverse, affirm, or modify such findings.

The argument drawn from the fact that the Supreme Court has no power to reverse findings of fact in a law case does not strike me with much force. That limitation upon the power of this court is found, not in the sections of the code above cited, which deal with the question under consideration, but in the constitution, in which no reference is made to such question. Indeed, the argument would prove too much, for inasmuch as this court has no power to review in a law case the facts even for the purpose of granting a new trial, it would follow that the Circuit Court would have no power to review the findings of fact by a referee even for the purpose of granting a new trial. If the jurisdiction of the Supreme Court in appeals was defined only in the sections of the code which we have cited, unaffected by the provisions of the constitution, as is the case with reference to the jurisdiction of the Circuit Court to review the report of a referee, then such jurisdiction would not be limited to the correction of errors of law only, but would extend to the correction of errors of fact also by the express terms of those sections; but as the constitution, which is of superior authority, does place such a limitation upon the jurisdiction of the Supreme Court, the comprehensive language of those sections, when applied to the Supreme Court, must necessarily be narrowed down to the limits fixed by such superior authority. But when we are called upon to construe the language of those sections, with a view to ascertain the extent of the jurisdiction of the Circuit Court in reviewing the report of a referee, as to which there is no constitutional limitation, we are bound to give that language its ordinary and plain meaning, and so construing it there can be no doubt that the power of review extends to findings of fact as well as of law.

Nor will it do to say that the language of subdivision 2 of section 290, which in terms gives the power to review findings of fact, must be regarded as referring only to cases in chancery;

and not to law cases. There is no warrant in the language of the section, or anywhere in the chapter in which it is found, for such a construction. On the contrary, it is found in a chapter entitled "Trial by the Court," and the first section of it (288) prescribes how a trial by jury may be waived in actions on contract, plainly referring to law cases, and not cases in chancery. The next section (289) treats of the trial of a question of fact by the court, and then follows the section which is referred to in section 294 as prescribing the manner in which the decision of a referee may be excepted to and reviewed in any case—whether at law or in chancery, is not specified; and hence I conclude that the same mode of proceeding applies to both classes of cases, and it being conceded, as I understand, that a Circuit Judge, in a case in chancery, may reverse, affirm, or modify the referee's findings of fact as well as of law, I see no reason why he has not the same power in a law case.

This conclusion does not abridge a party's right to a trial by jury in a case in which he is entitled to such a mode of trial, for it is only by his consent that such a case can be referred to a referee, and when he gives such consent, he must be regarded as consenting to the necessary incidents to a reference, one of which is, that the report of the referee can be excepted to and reviewed by the Circuit Court, and upon such review that the findings of the referee, both of law and fact, may be reversed, affirmed, or modified.

MR. JUSTICE McGOWAN. I concur in the result of the case, and in this opinion of Mr. Justice McIver as to the question of practice involved.

Judgment affirmed.