## 9401

### DuBOSE v. KELL *ET AL.*

(89 S. E. 555.)

1. **Appeal and Error—Review—Decision of Law or Fact—Statutes.—**
Code Civ. Proc. 1912, sec. 328, providing that for the purpose of an
appeal, either party may except to a decision on a matter of law
arising upon the trial, and that either party, desiring a review upon
the evidence appearing on the trial, either of the questions of fact
or of law, may take exceptions, has no relevancy to a decision upon
a matter of law, arising upon the construction of written instrument
made at trial by the Court under section 327.

2. **Wills—Construction—Contingent Remainder—Sale and Dispo-
sition.—**Under the will of one leaving two daughters as her only
heirs, devising one-third of realty to one daughter, and, in case of
her death without issue living at the time of her death, over to the
other daughter, and the residue to the latter, the contingent remain-
der of the latter on her death during the former's life passed under
her will, rather than to her heirs at law. (Per Watts *and* Gage, JJ.)

3. **Appeal and Error—Notice of Appeal—Necessity.—**A final judg-
ment cannot be reviewed unless notice of appeal therefrom be served
within the time required by law. (Per Hydrick *and* Fraser, JJ.)

Before Hon. C. M. Efird and C. C. Featherstone,
special Judges, Chester, November, 1914, and May, 1915.
Affirmed.

Action by Sarah F. DuBose, in her own right and as
administratrix of Susan C. Kell, deceased, against John A.
Kell, and others. Judgment for defendants, motion for
new trial denied, and plaintiff appeals.

Plaintiff's counsel offered in evidence the will of Mrs.
Jane Hemphill, dated October 20, 1854, and duly admitted
to probate, and the will of Miss Mary Hemphill, dated Feb-
ruary 25, 1862, and duly admitted to probate, both as fol-
lows:

Will of Jane Hemphill.—I, Jane Hemphill, widow of
Wm. Hemphill, deceased, of the district and State aforesaid,
do hereby make, publish, etc.    (Items 1, 2, 3, 4, and 5,

direct debts to be paid, and disposes of pecuniary legacies and slaves not involved in this cause.)

6th. I give, devise and bequeath to my daughter, Susan Douglas, the one-third part of all the rest and residue of my estate, real and personal, for the term of her natural life, for her sole and separate use and not to be subject to the debts, contracts or control of her present or any future husband, and at her death I give and devise the same to any child or children which she may leave. But in case she die without issue living at the time of her death, or if said issue should not arrive at the age of twenty-one years, then I give and devise the said portion to my daughter, Mary Hemphill. I authorize and empower my said daughter, Susan, to give, by will duly executed according to law, five thousand dollars to her present husband, or any other person she may desire out of said portion.

7th. All the rest and residue of my estate, I give, devise and bequeath to my daughter, Mary Hemphill, her heirs and assigns forever, to be to her sole and separate use, not to be subject to the debts, contracts or control of any future husband she may hereafter marry, and I authorize and empower her to dispose of the said estate to any person or persons she may think proper, by will or otherwise. This limitation and power to extend, also to whatever she may derive from my daughter, Susan's portion.

8th. I nominate, constitute and appoint James Hemphill and Wm. A. Roseborough, executors of this my last will and testament.

Codicil. South Carolina, Chester District.—I, Jane Hemphill, do make the following codicil to my last will and testament, dated the 20th day of October, one thousand eight hundred and fifty-four:

Whereas, By the seventh clause of my said will, I devise and bequeath to my daughter, Mary Hemphill, all the rest and residue of my estate (after certain previous dispositions) I now direct that in said residue, so bequeathed and

devised to her, shall be included all my bank stock, notes, bonds and money, and the plantation on Big Rocky Creek, formerly owned by Gen. Earle, to hold upon the terms and conditions set out in said clause, and they shall be considered as a part of the portion so given to her.

Given under my hand and seal, this seventh day of May, 1858.

(2) Will of Miss Mary Hemphill.

Dated February 25, 1862, and duly admitted to probate by probate Court for Chester district:

South Carolina, Chester District. "1st. I desire that all my just debts be paid.

2d. To the board of directors of the Theological Seminary of the Synod of South Carolina and Georgia, to them and their successors, I give and bequeath the sum of ten thousand dollars, to be applied by them to the use and benefit of said seminary.

3d. All the rest and residue of my estate, real and personal, I give, devise and bequeath to my executor, in trust to manage the same, and collect and receive the income thereof, for the maintenance and support of my beloved sister, Mrs. Susan Douglas, during her natural life, the said estate and the income thereof to be in nowise subject to the debts, contracts, or control of her present or any future husband, and in case she leaves any issue of her body, the said estate to be held in trust by my said executor for the use and benefit of said issue until the said issue shall arrive at twenty-one years of age. So much of said income of said estate as may be necessary to be applied to the support and maintenance of said issue.

4th. In case my said sister, Susan Douglas, should die without issue alive at her death, or if she should leave issue alive and the said issue should not arrive at twenty-one years of age, I make the following disposition of my estate above devised and bequeathed to her. I bequeath to Sarah

Kell, and Mary Kell, each the sum of two thousand five
hundred dollars; to Susan H. Hemphill, the daughter of
James Hemphill, the sum of five thousand dollars; to Hattie
Banks, daughter of Rev. Wm. Banks, the sum of five thou-
sand dollars; to Mary Earle, daughter of Mrs. Mary Earle,
the sum of five thousand dollars; to Margaret Aiken, the
sum of five thousand dollars. If either of the legatees in
this clause should die before me, I bequeath their legacies,
respectively, to those who at my death shall be their nearest
heirs at law. All the rest and residue of the said estate I
give, devise and bequeath (after finding a suitable support
for my old infirm negroes) to the Synod of South Carolina
of the Presbyterian Church, to be applied by the said synod
to the diffusion of the gospel of Christ.

5th. I authorize and empower my executor to collect the
debts due to me, and to sell and make such disposition of
my property as he may deem proper and advisable for the
purpose of carrying out the disposition of this will.

6th. I appoint James Hemphill, executor of this my last
will, etc."

*Messrs. Halcott P. Green, Henry & McLure* and *A. L.*
*Gaston,* for appellant, submit: *Motion for new trial was*
*remedy for error in Circuit decree:* 21 S. C. 11; 73 S. C.
582. *Especially in findings of fact:* 41 S. C. 305; 44 S. C.
300; 58 S. C. 1. *As such findings are not reviewable in a*
*law cause on appeal:* 50 S. C. 502; 67 S. C. 35; 72 S. C. 270
and 317; 77 S. C. 414; Code Civ. Proc., secs. 326, 327, 328
and 329; 23 S. C. 24. *Settling case and exceptions:* C. C.
Rule 47; Code Civ. Proc. 384, 332; Const. 1895, art. V.,
sec. 15. *As to construction of will:* 31 S. C. 14; 21 S. C. 1;
62 S. C. 482; 90 S. C. 146; 86 S. C. 1; 14 Cyc. 104; 3 Brev.
242 and 435; 2 N. & McC. 588; 62 S. C. 482; 1 Ferne
Remainders 537; 23 S. C. 385; 89 N. C.; 15 Fed. Cas. 8360;
91 S. C. 660; 78 S. C. 143, 147; Dudley Eq. 115; 1 Hill

413; 24 A. & E. Enc. of L. 409-412, 431-444; 26 S. C. 471; 16 S. C. 325; 2 Jarman Wills 500.

*Messrs. Marion & Marion, S. E. McFadden, R. B. Cald-* *well* and *W. H. Townsend,* for respondent, submit: *The only method provided in our law for reviewing a final decision upon trial by the Court (Code of Civil Proc., sections 327, 328) without a jury, is by appeal to the Supreme Court as provided in Code Civil Proc., sections 383 and 384;* and cite: 68 S. C. 118; 23 S. C. 24. *Motions for new trial on Circuit in law cases under Code Civ. Proc. 324 and 325:* 14 S. C. 324, 329 and 518, 520; 33 Barbour 647; 4 Bosworth 622; 27 App. Div. N. Y. 30; 59 Miss. 375, 378; 64 Ga. 289 and 295. *When time for appeal expired rights under decree became res judicata:* 97 S. C. 458; 100 S. C. 89. *Construction of will, transmissible contingent remainder:* 23 S. C. 216, 217, 225; 26 S. C. 471; 86 S. C. 450; 2 DeS. 430. *Capacity of synod to take:* 98 S. C. 391, 398; 38 S. C. 444; 28 S. C. 476. *Heirs at death of intestate take in preference to those at death of life tenant:* 1 Strob. Eq. 114; 4 Rich. Eq. 413; 102 S. C. 356, 364.

June 28, 1916.

The opinion of the Court was delivered by Mr. Justice Gage.

If a history of this litigation is desired, it may be found in 72, 76, and 90 S. C. and 51, 56, and 71 S. E. There is no need to repeat it here. The case has been tried by piecemeal. The particular matter now in issue is a title to land; the land is now in the possession of the defendants, and it is claimed by the plaintiff. The action being at law, a trial was had by the Court, under chapter IV, tit. 8, p. 125, of the Code of Civil Procedure. The judgment was for the defendants, and the plaintiff has appealed.

There are two appeals involved, one on the issue of title, tried before Hon. C. M. Efird, and one from a subsequent order of Hon. C. C. Featherstone. Both these gentlemen sat at Chester as special Judges, one in November, 1914, and one in March, 1915. The motion whereout the order of Judge Featherstone arose was made before Judge Efird under these circumstances. Judge Efird made up his judgment for the defendants on the issue of title after he had left the Circuit. The plaintiff thereafter moved, under section 328 of the Code of Procedure, before him at Lexington, for a new trial, and Judge Efird ordered that the motion for a new trial be heard at Chester at the March term, 1915, that term at which it so happened that Judge Featherstone heard the motion for a new trial, and refused it. So the appeals are from Judge Featherstone's order, which refused a new trial, and Judge Efird's judgment for the defendants in the legal action to recover the possession of the land.

In logical conformity the appeal from Judge Featherstone's order comes first for decision.

1. The motion for a new trial, as before stated, was made under title 8, c. 4, p. 125, of the Civil Code of Procedure. So that the meaning of that chapter, and especially of section 328, calls for a partial construction. We do not agree to that construction made by the appellant. The instant trial below was had under chapter 4, and the issues made must be governed by its terms. The decision of Judge Efird on title was filed with the clerk at Chester within 60 days after the Court trial. Had a question of fact been up for decision Judge Efird should have made a statement in his decree of the facts found and a separate statement of the law found. The decision of Judge Efird found only one fact, to wit:

"I find from the evidence that the said two tracts of land were assigned to Susan, and she went into possession of the same under the will of Jane Hemphill, and that she died

seized and possessed of the same shortly before the commencement of this action"
—and that fact is not controverted, so there is in issue no fact. The decision of Judge Efird stated his conclusions of law, and for purpose of an appeal here the plaintiff "may except to a decision of a matter of law." The proviso of section 328 has no relevancy to the instant case. Judge Efird authorized final judgment. The decision of Judge Efird was upon a matter of law arising upon the trial. There was no contested fact before him. It is true the appellant contends that Judge Efird did find a fact against the evidence, to wit, that the plaintiff was a niece of Susan C. Kell, when the fact is the plaintiff is a child of her who was sister to Susan's mother. But the fact so wrongly found has no relevancy to the legal conclusion of the Judge. There was and is, therefore, no use to review that finding of fact. Without an interpretation of section 328 in its entirety, we are nevertheless of the opinion that it gave no warrant for the motion that was directed by Judge Efird to be made, and which was made before Judge Featherstone. If Judge Efird made any error in his decision upon the issue of title, it was one of law, had upon the construction of written instruments, and the plaintiff has her remedy directly here. The case of *Meetze* v. *Railroad,* 23 S. C. 1, arose under the provision of chapter V of the Code, which provides for "Trial by Referees," and the opinion there expressed is not determinative of the question in the instant case.

2. And we come now to the consideration of the main question, to wit: Has the plaintiff proven title to the two parcels of land which she has sued to recover? She claims title "as heir at law of Mary Hemphill, after the termination of the life estate of Susan C. Kell." The parol testimony is practically irrelevant; the case rests in written instruments and the admitted facts. The wills of Jane and Mary ought to be reported. The admitted

facts are : (5) That Susan C. Kell died in December, 1902, and that her husband, B. E. Kell, predeceased her, dying in August, 1902. (6) That the Fishing Creek place described in the complaint is the same place that passed under the will of Mrs. Jane Hemphill into the possession of Mrs. Susan C. Kell, under the partition proceedings put in evidence above, roll No. 550. (7) That Mrs. Susan Douglas, after the death of her first husband, married B. E. Kell. (8) That Mrs. Susan C. Kell and Miss Hemphill were the only heirs at law of Mrs. Jane Hemphill at the time of her death, which occurred in 1862. (9) That Miss Mary Hemphill died in 1864, unmarried and without issue. (10) That at the date of the death of Mary Hemphill, in 1864, she was survived by her sister, Susan C. Kell, who was her only heir at law. (11) That at the death of Susan C. Kell the heirs at law or next of kin at that time of Mary Hemphill, as well as of Susan C. Kell and of Mrs. Jane Hemphill, were the plaintiffs, and her two sisters, Mrs. Boylston and Miss Cloud. (12) That Mrs. Susan C. Kell was in possession of both the Fishing Creek and Parish places. As to the Fishing Creek place, from the time of her mother's death up to the 20th day of November, 1880, when she conveyed to McMurray, and from the death of B. E. Kell, Sr., in August, 1902, to her death in December, 1902, she held a life estate under her husband, B. E. Kell's will. The two parcels of land belonged to Mrs. Jane Hemphill, the mother of Susan and Mary, and the sister of the plaintiff's mother. Jane limited the title by the sixth paragraph of her will to Susan for the term of her natural life, and at her death leaving no issue then living to Mary. All concede that. Mary thus took a fee contingent upon the nonhappening of the events named by Jane. As events turned out, had Mary survived Susan, she would have come into a vested fee, but Mary died wellnigh 40 years before Susan died. Nevertheless, at Mary's death in 1864, she had the fee, contingent upon the non-

happening of issue to Susan. Had Mary died intestate, such fee, though contingent, would have descended to her heirs at law, to wit, her sister, Susan *Dickson* v. *Dickson,* 23 S. C. 216; *Roundtree* v. *Roundtree,* 26 S. C. 471, 2 S. E. 474. But Mary made a will, by which she first bequeathed a legacy of $10,000 to a theological seminary, and then the residue of the property, this contingent fee admittedly included, she devised to her executor in trust for certain purposes, to wit: (1) To pay the income to Susan for her natural life; (2) to pay the income to the issue of Susan's body until they should be 21 years old; and (3) in default of such issue, "I bequeath to" certain named persons money legacies. James Hemphill was executor of both wills; and in 1873 he filed a bill to marshal the assets of both estates; and by decree in that case the land in issue was partitioned off to Susan as the one-third devised to her by Jane, and subject, of course, to the limitations laid down in Jane's will; and by the decree certain of the lands of Jane were partitioned off to Mary's estate (she being then dead), and they were ordered to be sold to pay the legacy Mary had bequeathed to the seminary which was a first charge on her estate, and which had come into Susan's hands by assignment; and a large balance, after such payment to Susan, remained due to Susan; and the decree made no direction about Mary's contingent interest in Susan's title; had that been then ordered sold and had it been sold, then the plaintiff's every shadow of right would have been gone. The executor died in January, 1902, and Susan died in December of the same year. The executor had never disposed of, by sale or otherwise, the contingent title which Mary had devised to him in trust.

The appellant's contention is that Hemphill, trustee, held under Mary's will the contingent fee to bide the happening of the named events (birth and survival of issue to Susan); and, when the event appeared impossible (Susan's death in

1902), the trust determined that day, and plaintiff, as the then admitted heir of Mary, took title on that day, in December, 1902. And *Blount* v. *Walker,* 31 S. C. 14, 9 S. E. 804, is cited for authority. We think the case cited does not decide the instant case. To turn aside and indicate the difference betwixt the two would divert attention from the facts of the instant case; and it is the instant case which must be decided. The record before cited shows that in 1873 the Hemphill estate had been wrecked by the ravages of war. The property of Mary, other than this contingent title, was not managed to pay income to Susan, but it was sold and the proceeds applied in part to the payment of a legacy of $10,000 to the board of directors of the theological seminary, which was a charge that came before any support for Susan. So far as the contingent title in question was concerned, there could be no income from it to be paid to Susan; it was a naked right. The Court in 1873 might have ordered it sold to pay the balance that was due to the seminary on its legacy, but did not. That title abided in the trustee awaiting an event which might evolve it into a vested fee, to wit, issue to Susan. But when Susan died without issue, the trustee held the contingent title waiting on that event. It is true the trustee was then dead; but a trust does not die. The duty of the trustee was then to sell the contingent title to pay legacies. If there was an equitable conversion by will of the title into money, the money belonged to legatees other than the plaintiff. If there was no equitable conversion, the title was in the trustee to sell and pay the same legatees.

The appellant insists that title to lands directed by the testator to be sold for payment of the proceeds to legatees vests the title in the testator's heirs until a sale by the executors; and he cites for authority 14 Cyc. 104; *Haskell* v. *House,* 5 S. C. L. (3 Brev.) 242; *Herbemont* v. *Bostick,* 4 S. C. L. (2 Brev.) 435; *Wood* v. *Reeves,* 23 S. C. 385;

*Walker* v. *Killian,* 62 S. C. 482, 40 S. E. 887. But this is not such a case. Mary devised her contingent title to the trustee. She did more than to give him a mere power to sell. She lodged the title in him, and authorized and empowered him to sell it to pay legacies. The plain direction of Mary was that this contingent title (as a part of her estate) should be held by her executor and trustee, to whom she ·devised it, until a certain event now passed, and that then it should be sold and the proceeds paid to certain named legatees. If that shall be done, then the plaintiff has no semblance of a legal title by descent from Mary. Mary disposed by will of her whole title, and none was left to descend to any heirs at law.

The judgment of the Circuit Court is affirmed.

Mr. Justice Watts concurs in the opinion announced by Mr. Justice Gage.

Mr. Justice Fraser. I concur in the result only because I do not think this Court has jurisdiction to consider the appeal from the order of Special Judge Efird, as the notice of appeal from his order was not signed within the time required by law.

Mr. Justice Hydrick concurs with Mr. Justice Fraser.

Mr. Chief Justice Gary did not participate in the consideration of this case.