DICKSON v. DICKSON.

1. A testatrix, after a bequest of personalty to her three sons, A, B, and C, by name, devised and bequeathed all the rest and residue of her estate to her daughters, D and E, for life, with remainder to their issue. The will then provides: "But in default of such issue, then the property so given to go to my three sons, share and share alike, or in case of the death of any of them at that time, to and among their then surviving children, such children collectively taking their parent's share." The three sons died, A without children, and B and C both leaving children, and afterwards the daughter D died without issue. *Held*, that the interest of the sons upon the determination of the life estate in the daughters was a contingent remainder, but nevertheless transmissible to their representatives; and therefore, upon the death of D, the estate held by her for life passed—one-third to the children of B, one-third to the children of C, and one-third to the legal representatives and heirs of A.

2. The gift of the remainder to the sons was a gift to them individually and not as a class.

3. Where the will does not make the limitation depend upon surviving the first taker, but places it upon some other contingent event, non-survivorship will not defeat the remainder, and upon the happening of the contingency after the death of the contingent remainderman, the remainder will vest in his heirs or representatives.

Before FRASER, J., Charleston, November, 1884.

This was .an action by Louisa O'Hear Dickson, daughter of the testatrix, Sarah O'Hear, against her infant daughter, Sarah O'Hear Dickson, and the children, their heirs and representatives, of James O'Hear and John S. O'Hear, and the administratrix of Joseph O'Hear. The action was commenced in June, 1884, for the purposes stated in the opinion of this court. The case was referred to G. H. Sass, Esq., master, whose report stated the facts and the questions involved, and then continued as follows:

The whole question turns upon the character of the estate created in the second class of remaindermen under the executory devise. It is claimed by the administratrix of Joseph O'Hear that Joseph took an absolute interest in his share; that the gift was an executory devise to the three sons absolutely, subject to be destroyed by the life-tenant's leaving issue, and by no other contingency whatever. The words which follow merely substitute the children of a deceased son in place of the parent as to their parent's share. The right to have the benefit of the terms of the devise became fixed on the death of testatrix. The gift to Joseph being absolute, with no proviso that he was to outlive the life-tenant, but mere provision that should he not, children of *his* might succeed to his rights, cannot be divested for others. And it is contended that the gift is not to "sons" as a class, but to "my three sons" (as if *nominatim* they having just been named), "share and share alike " Whatever doubts I might otherwise have had upon the point raised, they must yield to the authority of the case of *McElwee* v. *Wheeler*, 10 *S. C.*, 392.

\*     \*     \*     \*     \*     \*     \*

Applying this principle to the present case, it seems to me

clear that the interest of the sons must be held to have been wholly contingent. By the terms of the will, "in case of the death of any of them (the sons) at that time," the property was given "to and among their then surviving children, such children collectively taking their parent's share." I take the words "in case of the death of any of them at that time" to mean "in case any of the sons should be dead at the time of the death of either life-tenant without issue." And the effect of this clause is to substitute the children of any deceased son in their parent's place, such children collectively taking their parent's share. The remainder to Joseph (the son who died in the life-time of the life-tenant without children) never took effect at all.

The testatrix designated the persons who were to take upon the happening of the contingency of the death of the life-tenant without issue. They were her three sons. She further contemplated the possibility of one or more of the sons being dead at the time the contingency happened, and she provided that, in such case, the children of such son should stand in their father's place. In my judgment, the bequest to the sons was to them as a class, as contradistinguished from the daughters. Where a bequest is to children at the death of a tenant for life, those who then answer the description take. *Cole* v. *Creyon*, 1 *Hill Ch.*, 311; *Conner* v. *Johnson*, 2 *Id.*, 41.

At the death of the tenant for life in this case, there were no persons alive answering the description of "sons," but there were persons answering the description of the further clause of the will—*i. e.*, there were children of dead sons then surviving, and I think that those children took the whole property. Otherwise the share of Joseph must be regarded as having lapsed. Joseph died before the life-tenant. His *chance* of future possession, which was a mere possibility, was not such an interest as was devisable or transmissible. He left no children who could take it under the terms of the will. Either the bequest was to a class— "sons, or surviving children of dead sons"—in which case the children of James and John take the whole, or the share of Joseph falls into the estate. Courts will always, if possible, avoid the latter construction, and will endeavor to ascertain and give effect to the real intention of testator. It is my judgment that

upon the death of Amelia without leaving issue, her share passed to the then surviving children of the deceased sons, James and John, there being no children of Joseph to fulfil the terms of the devise.

That this result is in accordance with the intention of the testatrix is, I think, very clear from the construction of the will taken as a whole. Her purpose evidently was to provide for descendants of her own blood. She provides first for her daughters and their issue, and failing that, she substitutes her sons and their children who may survive the life-tenant. It was not in her contemplation that any strangers to her blood should inherit. And the husbands of her daughters and the wives of her sons are equally excluded. It seems to me that the construction which I have given to the devise is fully in accord with the purpose and intent of testatrix.

The devise to the children of the sons will not include grandchildren, and the grandchildren of James do not take. Grandchildren do not take under a bequest to children, unless there are no children, or there are strong and conclusive circumstances to show that such was the testator's intention. *Ruff* v. *Rutherford, Bail. Eq.,* 7 ; *Izard* v. *Izard,* 2 *DeSaus.,* 309.

As it is considered important to have the judgment of the court upon the points thus ruled by me, in order that the principle of the distribution of the estate may be fixed, I have thought it best to file this preliminary report, so that the question of the construction of the will may be settled by the court.

The case came on to be heard in the Circuit Court upon exceptions duly taken to this report by the plaintiff and such of the defendants as were not the children of James and John O'Hear. The Circuit decree, omitting its statement, was as follows:

The question, as stated by the master, is this: Is Joseph, who died in the life-time of Amelia leaving no children, excluded from sharing in the estate, so that the share of Amelia shall be divided between the children of James and John—one-half to the children of James collectively and one-half to the children of John collectively ; or did Joseph take a vested estate upon the death of testatrix liable to be divested upon the death of the life-tenant

leaving issue, and did such vested interest pass upon his death to his personal representative or to his devisees ?

I am unable to concur with the master in his conclusion on this point. A gift to persons as a class "is a gift of an aggregate sum to a body of persons *uncertain in number* at the time of the gift, to be ascertained at a future time * * *." 1 *Jarm. Wills*, 534 (edit. of 1880, by Linn & Co.). The gift here to the three sons, a definite number of persons, is just the same as if they had been called by name in the will. When there is a remainder to a person who is certain on an event which *must* happen, as the death of A, the remainder is vested. It is always contingent when the limitation over is on an event which *may never* happen, as the death of A without issue surviving him. The principles which distinguish vested and contingent interests are clearly set forth in *McElwee* v. *Wheeler* (10 *S. C.*, 392), a case relied on here. Judged by these principles, the interest of Joseph was contingent.

It does not follow, however, that because it was contingent it does not now go to the personal or legal representatives of Joseph. "A contingent interest will or will not be transmissible to the personal representatives of the legatee, according to the nature of the contingency on which it is dependent," as where the contingency is a *collateral* event. 2 *Jarm. Wills*, 479–480, same edition. See also 1 *Wms. Exec.*, 637–638. So where a testator devised to A and his heirs, and if A should die before twenty-one, then to B and his heirs. A died before twenty-one, but B died *before* him. Such a devise was "considered equivalent in point of interest to a contingent remainder, and consequently transmissible." 1 *Fearne Rem.*, 559–560.

I find in this clause no words indicating that the interest of the sons, in case of death in the life-time of the tenant for life, · was at all dependent upon that fact, except in the case of their leaving children, in which event the children of the one so dying were substituted for the parent. If all had thus died leaving no children, then there would have been, upon the theory of the report, a case of intestacy as to this property, which the courts ought to avoid if it can be done on any fair interpretation of the will. ·

I find nothing in the will which enables me to conclude that the word children includes grandchildren. If any child of either of the sons died in the life-time of the life-tenant, a question might possibly arise as to whether such child had a transmissible interest; but there is nothing in the case before me to raise such a question.

It therefore is ordered that one-third of the estate shall go to the personal representatives of Joseph, or to his heirs or devisees, according as it may be real or personal estate; one-third be divided amongst the children of James, and one-third amongst the children of John S., who survived the life-tenant, Amelia. It is ordered that the case be recommitted to the master with this construction of the said clause of the will and otherwise as directed by the said order of August 4, 1884.

The children of James and John O'Hear appealed upon the following exceptions:

I. Because his honor erred in overruling the report of the master that the devise to the sons of the testatrix was a devise to them as a class.

II. Because his honor erred in overruling the report of the master that the interest of a son dying in the life-time of the life-tenant was not devisable or transmissible.

III. Because his honor erred in holding that the devise to the sons was a devise to them as individuals, as if named.

IV. Because his honor erred in holding that there was nothing in the will indicating "that the interest of the sons, in case of death in the life-time of the tenant for life, was at all dependent upon that fact, except in the case of their leaving children;" whereas it is respectfully submitted that the provisions of the will, taken as a whole, show the intention of the testatrix to have been clear to provide for her sons as a class, the individuals to take to be ascertained upon the death of the life-tenant without issue, and his honor should have so held.

V. Because his honor erred in not holding that the interest of Joseph F. O'Hear was but a *"bare possibility,"* and that such interest was not devisable, transmissible, or assignable.

VI. Because his honor erred in not holding that the remain-

der, after the death of Mrs. Amelia Hoyt, the life-tenant, should be divided equally between the children of James and the children of John surviving at that time; one-half to the children of James, and one-half to the children of John.

Mr. W. W. Johnson, for appellants, cited 3 Peters, 377; 59 N. Y., 202; 1 DeSaus., 521; 19 S. C., 351; 1 Hill Ch., 322; 10 S. C., 364, 392; 2 Hill Ch., 43; 17 S. C., 512; 21 Id., 513; 4 Kent, 262, and note "a"; 14 Ves., 256.

Mr. Langdon Cheves, contra, cited 2 Hill Ch., 638; 1 Jarm. Wills (Big. 5 edit.), 871, 872; 2 Ibid, 155; 9 Ch. Div., 117; 1 Wms. Exec. (3 Am. edit.), 759; 1 Br. C. C., 181; 101 Mass., 336; 10 Rich. Eq., 394; 9 Sim., 644; 9 Ves., 233; 1 Price, 264; 3 Rich. Eq., 254; 1 Hill Ch., 359.

July 15, 1885.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   This case involves the rights of certain parties (named in the pleadings) under the will of Sarah O'Hear, deceased, late of the city of Charleston.   The will is set out in full in the "Case," but as the questions before the court arise more especially out of one clause thereof, it will only be necessary here to refer to that clause.   The testatrix left surviving two daughters and three sons, and in the clause of the will referred to *supra*, she bequeathed and devised as follows: "Item. I give unto my son, Joseph F. O'Hear, my servant boy Peter, absolutely. Item. To my son, John S. O'Hear, my boy Wells, absolutely. Item. To my son, James, my boy Charles, absolutely. Item. To my two daughters, Louisa and Amelia F. O'Hear, I leave all the rest and residue of my estate, both real and personal, for their own use and benefit during the term of their natural lives, and upon the death of either, leaving issue, such issue shall take their parent's share at marriage, or on arriving at age, absolutely and forever.   But in default of such issue, then the property so given to go to my three sons, share and share alike, or in case of the death of any of them at that time, to and among their then surviving children; such children, collectively, taking their parent's share.   It is my meaning and intention, however,

that the interest or income only, arising from the most judicious investment of the said property by my trustees, be paid to my daughters for their maintenance and support, they being allowed to select such servants as they please as attendants about them, and to choose their residence, which shall be purchased or hired, as may be deemed most advisable by a majority of my executors."

Amelia F. O'Hear, one of the life-tenants, died in 1882, leaving no issue. Her sister, Louisa, the other life-tenant, survived her, and has issue living; she is the plaintiff in this action. The three brothers of Amelia predeceased her. Joseph died in 185 , unmarried, and leaving no issue. He left a will, dated August, 1852, by which he gave all of his property to his brothers and sisters, in equal division. His brothers were appointed his executors, both of whom have since died, and the defendant, Mrs. S. Isabel O'Hear, has administered *de bonis non.* James O'Hear died in 1864, leaving children, some of whom have since died, leaving children. John S. O'Hear died in 1875, leaving children.

Upon this state of facts the questions presented for consideration are these: 1st. Joseph, one of the brothers, having died before the life-tenant, Amelia, leaving no issue, is his estate excluded from sharing in the distribution of that portion of the estate of his mother enjoyed by Amelia for life, and shall said portion be divided between the children of James and John, one-half to each family of children? Or, did Joseph take such an interest in the estate of the testatrix as under the facts will entitle his representatives or devisees to receive the same?

The Circuit Judge, his honor, Judge Fraser, overruling the conclusions of the master, held that the representatives of Joseph, or his heirs and devisees, according as the property was real or personal, were entitled to one-third of the estate in contest, and that the children of James and John, who survived Amelia, were entitled among them, each set, to one-third, no part going to the grandchildren. The appeal questions this holding, the appellants contending that the remainder after the death of Amelia should have been divided equally between the children of James and John, surviving at that time, that is, one-half to the children of James, and one-half to the children of John, Joseph having died unmarried and without issue, before the death of Amelia; and, there-

fore, in the opinion of the appellants, not entitled to any portion of said estate.

It is conceded on both sides that the interest bequeathed and devised to the sons of the testatrix upon the termination of the life estate given to her daughters, was a contingent interest as contradistinguished from a vested one, the contingency being the death of the life-tenants, one or both, without issue surviving. That this is a correct construction, we think is fully sustained by our recent cases of *McElwee* v. *Wheeler*, 10 *S. C.*, 392; *Boykin* v. *Boykin*, 21 *S. C.*, 513.

The appellant, however, contends that the interest to the sons was given them as a class, and that only such of the sons as were in existence at the time of the happening of the contingency, could take the share of such as may have died in the life-time of the tenant for life, being subject to the other provisions of the will, which directed that said share should go to their surviving children; and that, inasmuch as no one of the class was in existence at the death of Amelia, the life-tenant, all of her brothers (the sons) having predeceased her, the contingency never happened upon which either of these sons was to take, and that under these circumstances such of the children of the deceased sons as survived become entitled under that provision of the will, which declared that in case of the death of either of the sons before the death of the life-tenant, leaving children, they should take their parent's share. There is a class of cases in which, when property is given by will to be distributed among a class of persons at some future time, or on some future contingency, all are let in who come into existence before the time or the happening of the event; provided they be in existence at the happening of said event, and no one but such as may be in existence at that time can take. This case, however, in our opinion, does not fall within that class.

As was said by the Circuit Judge, quoting from 1 *Jarm. Wills*, 534: "A gift to persons as a class is a gift of an aggregate sum to a body of persons *uncertain in number* at the time of the gift, to be ascertained at a future time." Here the gift was not to a body of persons uncertain in number, and to be ascertained at a future time; on the contrary, it was to the three sons of the tes-

tator alive and in being at the time of the execution of the will, and the direction was that the property should go to these three sons, share and share alike, upon the death of the life-tenant, leaving no issue. Certainly it could not be contended that if the testatrix had named the sons, each to be entitled to a share upon the contingency specified, that in such case the doctrine as to the gifts to a class would apply, excluding such as were not in existence at the happening of the contingency, and giving the whole estate to such only as were then in being; and yet the language used seems to us to exclude the idea of a class as fully as if the sons had been named individually. The testatrix had but the three sons, and among these three she directed the estate to be divided upon the happening of the contingency mentioned, share and share alike; calling them by name could not have emphasized the idea that they were to take individually, and not as a class, more strongly.

Our conclusion is, that each of the sons was a contingent remainderman, to the extent of one-third of the property given to the life-tenants. See cases of *McMeekin, admr.,* v. *Brummet,* 2 *Hill Ch.,* 638, and *Pritchett et al.* v. *Cannon et al.,* 10 *Rich. Eq.,* 394.

The important question, however, what became of the interest of Joseph on his death before the life-tenant leaving no children? still remains. Had he left children, as did his brothers upon their death, the provision in the will giving the shares of the deceased sons to their children would have met the case; but, as we have said, he died leaving no issue. It appears somewhat anomalous that a contingent remainder which never, in fact, vests in the remainderman during his life, should yet be transmissible to his representatives. But that there are such contingent remainders is well settled. There are several kinds of contingent remainders classified by the character of the contingency upon which they are based. Mr. Fearne divides them into four classes. It is not necessary, however, to discuss all of these. It is sufficient for our present purpose to say that where the existence of the remainderman himself at the time of the event upon which the remainder is to take effect does not constitute the contingency, then the remainder is transmissible. A testator may

make it one of the conditions of the limitation that the remain-derman shall survive the first taker; but where he fails to do this and places the remainder upon some other event or contingency, wholly disconnected from the survivorship of the remainderman, the fact of his non-survivorship will not defeat the remainder, for the obvious reason that the testator has not so declared and directed. *McMeekin, admr.,* v. *Brummet,* and *Pritchett et al.* v. *Cannon et al., supra; Fearne Rem.,* 559, 560.

It is true that the will here defeats the remainder to such of the sons as may die in the life-time of the tenant for life, leaving children, by substituting in such an event the children of such son in the place of the parent. But there is nothing in the will which indicates a purpose that the remainder shall be defeated simply by the death of the sons before the death of the life-tenant. Nor is the remainder either expressly or impliedly made dependent upon the existence of the sons at the death of the life-tenant. On the contrary, it is made dependent wholly upon the event of the life-tenant dying without issue, which event having happened as to Amelia, the remainder takes effect, the share of Joseph being transmissible, and the shares of the other two sons going to their children as by the will directed.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.