WALKER, CLERK, AS ADM'R., v. KILLIAN.

1. WILLS—POWER OF SALE—PRESUMPTIONS—ADVERSE POSSESSION.— There is no evidence here going to show that parties in interest elected to take lands discharged from power of sale vested in executor, and there is no presumption of adverse holding from holding by executor, who is a legatee with others.

2. IBID.—CONVERSION—MORTGAGES—COSTS—ATTORNEY'S FEES.—Provisions in a will that certain lands should be sold by executor and proceeds divided between certain legatees, works an equitable conversion of real estate into personal property, vests no fee in land in the legatees, and they cannot mortgage it; but on attempt to do so, the mortgage executed by them operates as an equitable assignment of their interest; and upon sale of lands on settlement of testator's estate in suit for construction of will, &c., it is proper to pay costs of administration and fees of attorney of the personal representative of the testator before such mortgage; and there is no error to fix such fee as a lump sum, although the evidence thereon was based on the selling price of the land.

3. ATTORNEY'S FEE.—Under the terms of this mortgage attorney's fee was only provided in case of sale under the power in the mortgage, and where mortgagee is brought into Court as defendant in action to settle the estate of mortgagor's ancestor, mortgagee's attorney is not entitled to fee out of mortgage premises.

4. REAL PROPERTY—PARTITION.—Ordinarily the Court will sell lands in such parcels as will best subserve the interest of those having the greatest interest therein.

Before GARY, J., Richland, July, 1901. Affirmed.

Action by J. F. Walker, clerk of Court, as administrator *de bonis non cum testamento annexo* of estate of Eli Killian, and as administrator of estate of James Eli Killian, against J. A. Killian, Milton R. Killian, William B. Taylor, Charles H. Manson and J. N. Hunter. From Circuit decree, defendants, Manson and J. A. and M. R. Killian, appeal.

*Mr. Andrew Crawford,* for Manson, appellant, cites: *Appellant's mortgage debt should have been paid before fee of attorney for administrator:* 32 S. C., 462; 24 S. C., 238; 34 S. C., 99; 25 S. C., 193, 496; 30 S. C., 483; 36 S. C., 25.

*Mr. Jno. T. Seibels,* for Killians, appellants, cites: *As to sale of land in parcels:* 25 Ills., 322; 29 N. J. Eq., 466; 22 S. W. R., 852; 10 Wend., 422; 20 N. J. Eq., 159. *The rule as to appeal from findings of fact:* 57 S. C., 405; 55 S. C., 298.

*Mr. Jno. P. Thomas, Jr.,* contra, cites: *Administrator entitled to have his attorney's fee paid out of estate:* 21 S. C., 178; 45 S. C., 319; 12 S. C., 424; 11 Ency., 2 ed., 1245; 60 S. C., 273.

February 21, 1902.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   Eli Killian, of Richland County, in this State, departed this life on the 18th day of December, 1873, seized and possessed, amongst other things, of all that tract of land in said county and State, containing 615 acres, more or less, known as the "Lynch land."   By his last will and testament he appointed his widow, Mrs. Julia Killian, the sole executrix of his said last will and testament, who qualified as such executrix and entered upon the discharge of the duties of her said office soon after the death of her testator.   The fifth item of said last will and testament provides as follows: "Item 5. When my son, Milton Killian, shall reach the age of twenty-one years, I empower and direct my executrix hereinafter named" (his widow, Julia

Killian, was so afterwards named), "to sell upon such terms as to her shall seem best my tract of land containing six hundred and fifteen acres, known as the Lynch land, represented by a plat and grant dated 28 August, 1852, the proceeds of said sale to be equally divided amongst my three sons, John Henry Killian, Joseph Arthur Killian and Milton Raider Killian, each taking one-third part thereof; and if my son, Milton Killian, should die before attaining the age of twenty-one years, then the said sale hereby directed shall be made as soon after his death as my executrix may consider advisable. If either of my said sons should die before sale above described, without bearing child or children living at the time of his death, then his share shall go to the surviving brother or brothers, as the case may be." Mrs. Julia departed this life testate before having exercised the power to sell the lands. Her will was duly admitted to probate, and her son, Joseph A. Killian, a defendant here, was named as her executor, and qualified as such. By the law, as it existed in this State until the year 1880, he became the executor of his father's will. He, too, failed to exercise the power to sell the said lands named in said "Item 5." Joseph A. Killian, having completed, as he thought, no doubt, all the duties of his office, procured the probate court for Richland County to grant him a discharge as such executor on the 14th June, 1879. John Henry Killian departed this life on or about        day of February, 1880, intestate, leaving his widow, Catherine Killian, and one son, James Eli Killian, as his only heirs at law, next of kin and distributees; his widow, Catherine Killian, departed this life in the year 1890, leaving her son, the said James Eli Killian, as her only heir at law, next of kin and distributee. The said James Eli Killian departed this life intestate on the 18th January, 1897, never having married, leaving paternal uncles, Joseph A. Killian and Milton R. Killian, and his maternal uncle, William B. Taylor, as his only heirs at law, next of kin and distributees. James Eli Killian left debts unpaid which amount now to about $100. But Joseph A. and Milton R.

Killian, in 1888, mortgaged their two-thirds interest in the 615 acres of land to secure a debt, now held by Charles H. Manson, of a little over $1,200. The clerk of the Court, J. F. Walker, procured himself appointed, as required by law, administrator of the estate of James Eli Killian, deceased, and advertised for demands against intestate's estate. J. N. Hunter preferred a debt still subsisting and another debt was presented. The said J. F. Walker, as clerk of Court, then procured letters of administration *cum testamento annexo* on the estate of Eli Killian, deceased. Creditors of the said James Eli Killian, deceased, threatened to sue for their debts. The said administrator was in doubt as to his duty under the will of Eli Killian. Hence he filed his complaint, reciting all the foregoing facts against Joseph A. Killian, Milton R. Killian, William B. Taylor, Charles H. Manson and J. N. Hunter, as defendants, asking for a construction of the will of Eli Killian, deceased, to enjoin creditors of James E. Killian from suing, to sell lands to pay debts, &c.

In the answers of the defendants, Joseph A. and Milton R. Killian, they set up the facts that they and their nephew, James E. Killian, had held the lands, taking to themselves the profits thereof under said "Item 5" of their father, Eli Killian's, will. They admitted that they had mortgaged their two-thirds of the lands to secure a debt now owned by the defendant, Charles H. Manson, for something over $1,200 at its inception, but they insisted that they each had conveyed to Jno. T. Seibels, Esq., a one-third interest each in the share of Jno. H. Killian, which was devolved by law upon their nephew, James E. Killian. in his lifetime. They insisted that the 615 acres should be divided for sale into six tracts of a little more than 100 acres in each said tract as so divided. The answer of Charles H. Manson set up the debt he held against the two-thirds owned by Joseph A. and Milton R. Killian in the 615 acres of land, and denied that it would be to the best interests of the owners of said lands to divide the same.

By the order of Judge Benet, all the issues of law and fact were referred to the master for Richland County. In his report, after taking much testimony, amongst other things, he held that the mortgage held by Mr. Manson could not operate as a mortgage of land, but should in equity be construed as an assignment of their shares of the purchase money of two-thirds of said lands; that Jno. P. Thomas, Esq., as plaintiff's attorney, was entitled to a fee of $250, to come out of the proceeds of sale of the whole 615 acres after payment of costs; that the one-third of the proceeds of sale, after discharging its share of said fees and costs, should be first applied to the payment of the debts as herein reported of James Eli Killian, deceased, expenses of administration, and then afterwards the balance remaining should be applied as follows: one-third to be paid to W. B. Taylor and the other two-thirds thereof to John T. Seibels, Esq.; that the lands would sell more advantageously if sold in one tract rather than to be divided up into 100 acre lots or parcels.

To this report the defendants, C. H. Manson and J. A. and M. R. Killian, all excepted. The exceptions came in to be heard by his Honor, Judge Ernest Gary, who thereafter passed the following decree:

"This cause came on to be heard before me upon the report of John S. Verner, master for Richland County, of date November 7, 1900, to whom it had been referred to hear and determine all the issues of law and fact raised by the pleadings. The defendant, Charles H. Manson, and the defendants, Joseph A. and Milton R. Killian, filed exceptions to the master's report.

"The exceptions of Charles H. Manson raised the point that the doctrine of equitable conversion did not apply to the land mentioned in the will of Eli Killian, and by said will directed to be sold, and that the master erred in holding and in finding that there had been no exercise or attempt to exercise the power of sale given by said will; and that the master erred in holding that the said land, being in contemtemplation of law personalty, the mortgage held by said

defendant operated only as an equitable assignment of the interest of the mortgagors thereunder in the proceeds of the sale thereof; and that the master erred in finding that the costs of the administration of the estate, including a fee of $250 for his attorney, should be paid out of the proceeds of the sale of the property prior to the claim of the defendant, Manson.

"Now, it appears that Eli Killian died in 1873, seized of a tract of land in Richland County, known as the 'Lynch land,' and that he provided in his will as follows: 'Item 5.' * * * (Then the decree sets out the 'item' in full, for which see the first part of this opinion.)

"The master finds that, notwithstanding Milton R. Killian had passed the age of twenty-one years, there had been no exercise, nor any attempt to exercise, the power of sale given by 'Item 5' of the will of the said Eli Killian, either by his executrix or the executor of his executrix. This finding is sustained by the evidence. It also appears by the evidence that there was no adverse holding of the land in question by Joseph A. Killian and M. R. Killian as against their brother, John Henry Killian, their nephew, James Eli Killian, the son and heirs at law of said John Henry Killian, and I find accordingly. I think, also, that the master is correct in his legal conclusions, that under the will of Eli Killian, by the doctrine of equitable conversion, the land must be considered as personalty; and said tract of land being in contemplation of law only personal property, the mortgage of J. A. and M. R. Killian to Charles H. Manson is not a lien upon the land, but operates as an equitable assignment of the interests of J. A. and M. R. Killian in the proceeds of the sale at the time it was given on March 28, 1888. These conclusions are supported by the authorities: *Wood* v. *Reeves,* 23 S. C., 385; *Dunlap* v. *Garlington,* 17 S. C., 572; *Andrew* v. *Loeb,* 22 S. C., 275. In Wood *v.* Reeves, the Chief Justice says: 'Land directed to be sold by a will and the proceeds divided, is converted into personalty, money, which cannot be mortgaged.' 23 S. C., 287, Mr. Pomeroy says: 'Lands directed

to be converted into money go to testator's personal representatives, or is included in a residuary bequest of his personal property.' 1 Pom. Eq. Jur., sec. 37. This quotation is cited with approval by our Court in *Colton* v. *Galbraith,* 35 S. C., 534.

"As to the allowance of a fee for plaintiff's attorney in this proceeding : It seems to me that this is one of the legitimate expenses of the settlement and of the administration of the estate of Eli Killian. The action is brought by the plaintiff in his representative capacity, asking for a construction of the will of Eli Killian, and that he be instructed as to his duties thereunder ; that creditors be called in, and that he be allowed to account before the Court for his actions and doings as administrator, &c., and that he be thereupon discharged from accountability, &c. We have here the case of a plaintiff who, in a fiduciary capacity, comes into Court to ask for instruction as to the proper management and disposition of a common fund, and the settlement of an estate where there are conflicting interests. In such cases it is usual to make an allowance for counsel fees for plaintiff's attorney, as a necessary expense incurred in the execution of his duties. As is said in *Hand* v. *R. R. Co.,* 21 S. C., 178 : 'The underlying principle in all these cases, where one has been allowed compensation out of a common fund belonging to others, for expenses incurred and services rendered in behalf of the common interests, is the principle of representation or agency. Where such compensation has been allowed, the party claiming has been in some way the recognized and authoritative representative of the whole, and, therefore, authorized to contract for the whole. Thus, executors, administrators and other trustees, being the legal representatives of the parties interested in the trust fund or property, have been usually allowed credit for all necessary and reasonable charges incurred by them in the proper management and protection of the trust fund.' So in *Lawton* v. *Perry,* 45 S. C., 319, which was a creditor's bill for the purpose of subjecting the lands to the payment of debts, it was

held to be a proper case for plaintiff's counsel fee to be paid out of the common fund; and in *Brooks* v. *Brooks,* 12 S. C., 424, it is held that counsel fees to an executor may be allowed in the discretion of the Circuit Judge. I find that the amount fixed by the master for the counsel fee of plaintiff's attorney in this case is sustained by the evidence, and is reasonable.

"The defendants, J. A. and M. R. Killian, except because the latter finds that, in addition to the sum of $1,666.98 for principal and interest, represented by the note and mortgage filed by the defendant, Manson, there is due and owing thereon to the said defendant by J. A. and M. R. Killian the sum of $166.59 for attorney's fees; and because he finds that a sale of the land as a whole would be more advantageous to all parties in interest rather than a sale in parcels. The right of the defendant, Manson, to an attorney's fee upon the amount due upon his note and mortgage depends upon the contract of the parties as evidenced by the note and mortgage. Under the terms of the note and mortgage, I do not find that there was any agreement to pay an attorney's fee, except in the event of a sale by Manson under the power contained in the mortgage. A sale under the order of the Court in this proceeding would not come within the terms of the mortgage. *Association* v. *McCarthy,* 43 S. C., 72. See, also, *Ellis* v. *Young,* 31 S. C., 325. I concur in the master's finding as to the advisability of the sale of the property as a whole." (Then follows the judgment providing for the sale of the property, and the distribution of the fund in accordance with the foregoing view.)

To this decree the defendant, C. H. Manson, filed the following exceptions:

"1. For that his Honor erred in holding that notwithstanding Milton R. Killian had passed the age of twenty-one years, there had been no exercise, or attempt to exercise, the power of sale given by 'Item 5' of the will of said Eli Killian, either by his executrix or the executor of said executrix; whereas, he should have held under the evidence that the

property at issue had gone into possession of the Killians, who had held the same adversely and under presumption of a grant for ten and twenty years, respectively, against all parties and against the world.

"2. That his Honor erred in holding, further, that said land being in contemplation of law only personal property, the mortgage of the Killians to Charles H. Manson 'is not a lien upon the land, but operates as an equitable assignment of the interests of said Killians in the proceeds of the sale at the time it was given on 28 March, 1888;' when he should have held that even as an equitable assignment, it did become a lien in contemplation of law, with a claim on it in favor of the assignee to be paid in preference to any other demand established against the estates of which it might be a part.

"3. That his Honor erred in holding that the allowance of an attorney's fee for plaintiff in this proceeding is one of the legitimate expenses of the settlement and of the administration of the estate of Eli Killian, and more especially in decreeing that said fee should take precedence of and be paid before the claim of C. H. Manson.

"4. That his Honor erred in holding that, under the terms of the note and mortgage held by C. H. Manson, there was no agreement to pay an attorney's fee except in the event of a sale by Manson under the power contained in the mortgage, especially as said Manson was forced into this proceeding in foreclosure as a defendant, thus enabling him only in that manner to sell the property on which he held a mortgage, whereby he was denied the privilege of selling in accordance with the strict letter of the power contained therein.

"5. That his Honor erred in not holding that the fee of $250 decreed in favor of the plaintiff's attorney should be paid, as the same effects the Manson mortgage after the latter had been paid in full, out of the proceeds of the sale of that portion of the 'Lynch land' affected by its lien; and he further erred in fixing said fee at a lump sum, when all of the evidence relating thereto declares that the amount thereof

should be controlled by the selling price of the land when it is sold by the master."

We will first dispose of Mr. Manson's exceptions. The first exception cannot be sustained, for there is no evidence offered going to show that the parties interested, to wit: the three sons of Eli Killian, elected to take the lands in question without any or discharged from the duty of the executrix or her executor, or the administrator *cum testamento annexo* of Eli Killian, deceased, under the "Item 5" of his will, to sell said lands for the division of the proceeds of sale amongst them. If we were to draw an inference, we would say that the death of the executrix so soon after she undertook the discharge of the duties of her said office was the first interference with the "Item 5" of Eli Killian's will. After that the defendant, Joseph A. Killian, as the executor of Mrs. Killian's will, failed to realize that the duty of executing Eli Killian's will was devolved by law upon him. This being so, the sale of the lands awaits a performance as directed by Eli Killian's will. No presumption by reason of the possession of Joseph A. and Milton R. Killian could arise, because Joseph, as executor, held *as such representative* of Eli Killian's estate. This exception is overruled.

2. The Circuit Judge committed no error as is referred to in the second exception. Certainly, if a testator orders certain of his lands to be sold and the proceeds of the sale divided, the fee to said lands does not vest by operation of law in the persons to whom the proceeds of sale when made is given. It becomes a personal estate or a legacy in such persons. Any attempt to mortgage the land by the two sons, Joseph and Milton, cannot operate as a mortgage; it is only an assignment of such shares which will be enforced as an equity in the alleged mortgagee. It was not a superior lien to the expenses of administration, but only displaces any subsequent lien Joseph and Milton might have sought to place upon it. The second exception is overruled.

3. We think the Circuit Judge's decree as to the fee of Mr. Thomas is entirely correct. It became necessary to obtain the direction of the Court as to the administration of Eli Killian's will. The construction sought by the plaintiff had been adjudicated herein. Of course, the expense of such adjudication must fall as a charge upon the estate of Eli Killian. This is all that the Circuit Judge ordered. This third exception is overruled.

4. We think the Circuit Judge was correct in looking to the alleged mortgage given by Joseph and Milton Killian to C. H. Manson to ascertain what their contract required. He has construed the contract, and in doing so he did not err. Let this exception stand as overruled.

5. As to the fifth exception, we do not think the Circuit Judge was in error. The fee to be paid Mr. Thomas after the payment of the costs, was a charge upon the whole estate, covered by "Item 5" of Eli Killian's will. There was no error in fixing such compensation at what is called a "lump sum." This exception is overruled.

The defendants, Joseph and Milton Killian, also presented exceptions to the decree of Judge Gary. These exceptions are as follows: "It is respectfully submitted that his Honor, the presiding Judge, erred in overruling the third exception of the defendants, Joseph A. Killian and Milton R. Killian, to paragraphs XV. and XVI. of the master's report, wherein he found and reported as follows: (1) that it would inure to the benefit of the persons interested in said sale, that said tract of land should be sold. as a whole; (2) that the tract is mostly valuable now for its timber; (3) that it is best to sell the tract as a whole, and so recommends, and erred in confirming said finding and recommendations, and in ordering said land to be sold in one parcel as a whole; said exception being that the testimony showed: (1) that it would be most advantageous to the interest of all concerned to sell said lands in parcels of, say,

100 acres or other convenient sizes, and that the said tract is capable of such subdivisions without injury; and (2) that said land is more valuable for agricultural purposes than for timber; and (3) that a sale of said land as a whole would be very injurious to the interests of all persons concerned, except, possibly, that of the said mortgagee, as the tract being large, there would be but few bidders therefor; whereas, if sold in parcels on easy terms, there would be many bidders, and the greater amount realized would more than offset all the additional costs rendered necessary; whereas, it is respectfully submitted that said exception should have been sustained, and said land should have been ordered sold in desirable parcels to be shown by a plat, as prayed in the answers of the defendants." The exceptions have given some trouble, for it was difficult at first to see why the division of the lands into tracts of 100 acres each and sold for one-third cash and two-thirds on a credit of one and two years, secured by a mortgage of each lot so sold, might not be more advantageous to the interests of all concerned than for the whole tract to be sold in a body at one-third cash and two-thirds on credit of one and two years—especially in view of the testimony that at least two persons stood ready to purchase; but upon reflection it suggests itself that if the 615 acres were so divided, it might be that the central two tracts might be as advantageously sold, leaving the other four tracts with no bidders except those in interest, and in this way the value of a continuous possession would be baulked. We ought to protect the interest of all parties interested. Mr. Manson has the greatest interest, and he is pronounced in his opinion that to sell the 615 acres in lots would be prejudicial to his rights, and he is sustained in his view by at least three real estate agents. Under these circumstances, we will overrule these exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and the action remitted to the Circuit Court to enforce the decree appealed from.