(No. 2753.    Jan. 25, 1924.    Rehearing denied Feb. 25, 1924.)

## PEREZ v. GIL'S ESTATE et al.

### SYLLABUS BY THE COURT.

1. Findings of fact, which are supported by substantial evidence, will not be disturbed on appeal.

2. An executor or administrator is entitled to be reimbursed for all expenses incurred in the care, management, and settlement of an estate, including reasonable attorney's fees incurred in the course of necessary litigation, or in matters requiring legal advice or counsel.

3. Such an executor or administrator is entitled to be so reimbursed before creditors are paid anything, whether their claims be secured or unsecured, preferred or otherwise.

4. Where a third person furnishes supplies which are used by an executor or administrator in operating and conducting the business of the decedent, as well as money which is used in defraying the expenses of conducting such business, he is entitled to take the place and stead of the executor or administrator and to be likewise reimbursed therefor before the creditors are paid anything upon their accounts.

Appeal from District Court, Guadalupe County; Leahy, Judge.

Action by Eugenio Perez against the estate of Pascual Gil, deceased, and others. From a judgment for defendants, plaintiff appeals. Affirmed.

### STATEMENT OF FACTS.

Pascual Gil, a resident of Guadalupe county, died February 10, 1920. On April 7, 1920, Isidro Gil, a brother of the deceased, and Benito Nicholao, were duly appointed joint admniistrators of the decedent's estate by the probate court of Guadalupe county, and in due time they qualified in the manner prescribed by law and in due time they qualified in the manner prescribed by law and have ever since acted in that capacity. At the time of his death the decedent owned an estate, which was subsequently appraised at $29,-419.40, consisting principally of sheep and certain improvements used in the operation and conduct of his sheep business. He owned some other personal property of an insignificant value. At the time of his death, the deceased owed $15,517.86 to the Citizens' Bank of Vaughn, which was secured by a chattel mortgage upon certain ewes belonging to the estate, together with the wool and increase upon the same. In addition, he owed the appellant, Eugenio Perez, $5,000 evidenced by two unsecured promissory notes. After certain extensions and partial payments, the indebtedness due the bank at Vaughn was fully paid off and discharged. While the estate was in the process of probate, the administrators executed a second chattel mortgage (subject to the prior mortgage to the Citizens' Bank of Vaughn) in favor of the appellant and the administrator Nicholao covering the entire properties on the estate to secure the two notes due the appellant, as well as an item of indebtedness due said administrator in the sum of $1,125.16. This was included in the second mortgage with the debt due the appellant, it being deemed convenient to handle them jointly rather than separately. No authority was obtained from the pro-

bate court in advance to execute such mortgage.    Afterwards, and on September 6, 1921, an order was entered by said court ratifying, approving, and confirming its execution and delivery.

The administrators were without funds with which to continue the operation and conduct of said sheep business, and conditions and prices were such that it was considered inadvisable to sell any of such live stock.    Owing to these facts, the administrators applied to the appellee G. W. Bond & Bro. Mercantile Company, who will hereinafter be referred to as the Mercantile Company, for an advance upon the 1920 crop of wool. Such firm agreed to and did advance 20 cents per pound on the entire crop, which amounted to $5,268.60, and in addition thereto it furnished to the administrators groceries and other necessary supplies, which were used in the conduct of such business, amounting to $524.41.    The wool crop was shipped by said Mercantile Company to Messrs. Adams and Leland of Boston, Mass., and due to a decline in value it was later sold on the open market for $2,522.69 less than the said Mercantile Company had advanced.

The administrators filed their second report and account, in which they showed the payment of the debt secured by the first mortgage, the execution and delivery of the second mortgage, and the facts surrounding the advance upon and sale of the wool, as well as the supplies furnished by the above mentioned Mercantile Company. They further showed that they had then on hand the sum of $3,251.98 in cash, as well as certain small items of personal property, and that conflicting claims were being made with respect to such money; the appellant claiming it under his chattel mortgage and the Mercantile Company claiming it upon the theory that said mortgage was void because it was given for the sole purpose of creating a preference of one creditor over the others, and that the money so advanced by said company had been used in defraying the necessary expenses of such administration, and further that the

supplies furnished were in the nature of necessary expenses of such administration, and that it had the same rights as the administrators to be reimbursed for such expenditures before the payment of the ordinary claims.

The district court heard the matter upon these contentions and made full findings and conclusions of law; among others, it was specifically found that the supplies furnished by the appellee were necessary expenses of administration, and that all of the money so advanced, except $1,000 which was paid directly to the appellant and by him credited upon his claim, was used to pay the necessary expenses of administration. Final judgment was rendered in which the chattel martgage was held to be invalid; the appellant was declared to be a general creditor without security, and the claims of the Mercantile Company for the supplies furnished, as well as the overpayment on the wool, were declared to be prior and were ordered first paid before the other creditors received anything.

From such action this appeal was taken, and the contest is confined to priority of claims of the appellant and the appellee the Mercantile Company to the money now possessed by the administrator.

F. Faircloth, of Santa Rosa, for appellant.

W. J. Lucas and H. S. Blattman, both of East Las Vegas, for appellee G. W. Bond Mercantile Co.

Rodey & Rodey, of Albuquerque, for appellees Gil and Nicholao administrators.

### OPINION OF THE COURT.

BRATTON, J. [1] 1. Findings of fact made by the trial court that the supplies furnished were necessary expenses, and that all of the money, save the $1,000 which was paid directly to the appellant and by him credited upon his indebtedness, was used to pay off and discharge the operating expenses of the business, are supported by substantial evidence. They will, therefore, not be disturbed on appeal. We shall con-

sume neither time nor space to cite the many decisions
from this court declaring this well-known rule.

[**2**] 2.   Much has been said by counsel in their
briefs with respect to the authority of the probate
court to authorize in advance, or ratify afterwards, a
chattel mortgage executed in favor of 'an existing
creditor of an estate.   This discussion has revolved
around whether or not to do that results in preferring
one creditor over the others in violation of the statutes
of this state. ' We think this is beside the controlling
question in this case.   It is provided by section 2293
Code of 1915, that in all cases of administration the
executor or administrator shall be allowed, in the
settlement of his accounts, all necessary expenses in-
curred in the care, management, and settlement of the
estate, including reasonable attorney's fees incurred
in the course of litigation or in matters requiring legal
advice or counsel.

"An executor or administrator shall be allowed, in the set-
tlement of his accounts, all necessary expenses incurred in the
care, management, and settlement of the estate, including rea-
sonable attorney fees in any necessary litigation or matter
requiring legal advice or counsel.   For his services he shall
receive such compensation as the law provides; but when the
deceased, by his will, has made special provision for the
compensation of his executor, such executor is not entitled to
any other compensation for 'his services, unless he shall within
ten days after his appointment, subscribe and file, with the
clerk a written declaration renouncing the compensation pro-
vided by the will."   Section 2293, Code of 1915.

Section 2283 of the Code provides that as soon as
the executor or administrator (the word executor alone
is used, but as used, means administrator also—sec-
tion 2215, Code of 1915) is possessed of sufficient
means, over and above the expenses of the administra-
tion, he shall pay off the charges of the last sickness
and funeral of the deceased, and then any allowance
which may have been made by the court for the main-
tenance of the widow and children.

"As soon as the executors are possessed of sufficient means
over and above the expenses of administration  they shall pay

off the charges of the last sickness and funeral of the deceased, and they shall next pay any allowance which may be made by the court as provided by law for the maintenance of the widow and children." Section 2283, Code of 1915.

The next succeeding section of the statute then provides that other demands against the estate shall be payable in the order therein named, the first being the preferred claims, into which class, conceding the contention of the appellant to be sound, he falls.

[3] From these statutes, it plainly appears that all necessary and proper costs and expenses incurred in the care, management and control of an estate must be paid to the executor or administrator, as the case may be, before any of the claims of creditors, whether they be secured or unsecured, preferred or otherwise, and, so far as we are informed, such has been the uniform practice universally adopted throughout the state. So that, had the administrators furnished the money with which to pay the expenses of operating the business in question, including the purchase of supplies, we think it perfectly clear that they should be authorized to first deduct such sums from the money on hand before paying anything to any of the creditors. And assuming for the moment that the chattel mortgage held by the appellant was valid—a question which we neither decide nor express an opinion upon—such expenses would have to be first paid before the appellant would be entitled to receive anything upon his debt so secured. Instead of furnishing such money and supplies from their personal funds, the administrators secured the same from the Mercantile Company. And that company claims to take the place and stead of the administrators, and hence becomes entitled to be first paid before the appellant receives anything, and we think its contention is sound. The money and supplies furnished by it were used for the benefit of the estate and to protect and preserve its assets. At the death of the decedent, the rights of his creditors were fixed against all of the property he died seized of, and their rights, as among themselves, were fixed upon

the status existing at the time; but such rights do not extend to nor include creditors who, subsequent to the death of the decedent, furnish money to the administrator with which to protect and preserve the estate. Here the supplies were used in the operation of the business; all of the money except $1,000, which was paid directly to the appellant and which he received the full benefits of, was used to defray the expenses of the business, and hence it served to protect and preserve the assets of the estate. And the appellant must be deemed to have consented to the administrators continuing to operate and conduct such business, because he extended his loan and accepted collateral security therefor, and must have known that expenses would be incurred and money would be expended in payment thereof, and that, if the administrators took such expenses from the corpus of the estate, they would be deducted from the remaining assets securing his debt; if they paid them from their personal funds, they would be deducted, and if they secured them from the appellee and they were used to preserve such assets to which appellant was looking as his security, in good conscience, the appellee should be permitted to take the place and stead of the administrators and be reimbursed before the appellant received anything. To permit the appellant to profit by the expenses furnished by the appellee to preserve and protect the assets of the estate to which the appellant looked for his collateral security would be an unconscionable thing. Such supplies and money were no part of the assets of the estate in the hands of the administrators to be distributed among its creditors. They were merely placed with such administrators to be used in protecting and preserving the assets of such estate and hence preserving the collateral security of its creditors. How they can complain of the repayment of the same is somewhat difficult to understand.

[4] It may be said that the appellee does not come within the strict doctrine of subrogation, because that doctrine, in its strict sense, does not apply to volun-

teers, but only to substitution by contract. Such substitution may and frequently does result from operation of law. The transaction between the administrators and the appellee is, in substance, if not in form, a transfer of the right to make a preferred claim, namely, to be reimbursed for the necessary expenses incurred and paid in the care, control, and management of the estate. Williamson's Appeal, 94 Pa. 231. It is generally held that a person who advances money to an executor or an administrator with which to pay debts or expenses, and such money is used for that purpose, will be permitted to take the executor's or administrator's position and be subrogated to his right of reimbursement. In 24 C. J. p. 71, §491, it is said:

"While a person who lends or advances money to an executor or administrator upon a promise by note or other contract acquires no right at law or in equity against the estate unless the money has in fact been applied to pay debts or otherwise to benefit the estate, he will in such case be permitted to take the representative's place and be subrogated to his right of reimbursement from the estate."

In Nathan v. Lehman, Abraham & Co., 39 Ark. 256, it was declared in general terms that moneys furnished by a third person and used to improve the property belonging to an estate and to protect it from an attachment should be classed as necessary expenses. The claim had not been so classed, and it was held that, inasmuch as no fraud had been established, there was no ground to open the allowance in chancery. We think, however, the general principle of law there declared, when applied to the facts existing here, may be peculiarly applicable. It is said in that case:

"One of the claims of Lehman, Abraham & Co.. being for moneys advanced to the administrator to improve the real estate, and protect it against an attachment suit, was improperly allowed and classed, in the fifth class, against the estate It should have been allowed, if at all, as expenses of administration."

In Woods v. Ridley, 27 Miss. 119, 150-151, it is held generally that where an administrator, with his own

personal money, pays the debts of an estate, he will be permitted to charge such estate with such expenditures in presenting his account, and that where a third person furnishes money to an administrator for the purpose of paying off such debts, and it is actually used for that purpose, such third person will be permitted to take the place of the administrator and may likewise hold the estate for the same. In such an instance he takes the place and stands in the shoes of the administrator and possesses all rights to enforce such a claim as the administrator would have, had he furnished such money personally. This pertinent language was used by that court:

"Notwithstanding it is incompetent for the administrator, by his contracts or promises, such as we have been considering, to impose any debt upon the estate of the intestate, it is not to be controverted that, if he with his own money pay the debts, he will be entitled to charge the estate in his administration account with the amount of the debts so paid, and to save the effects sold for the payment of his claim. He would also have the right by bill in equity to enforce the payment of his demand against the heirs and distributees, in case the estate had passed into their hands.

"It appears to be settled also, that where an executor or administrator has given his own note in payment of a debt of the testator or intestate, the estate would not thereby be released, unless such was the agreement of the parties: and this although the executor may have settled and given himself credit in his account for the debt. In such a case the creditor might, at his election, hold the executor personally liable, or proceed by bill against the estate. Peter v. Beverly, 10 Peters (U. S.) 532, 9 L. Ed. 522; Douglas v. Fraser, 1 Rich. Eq. R. (S. C.) 105.

"Persons dealing with the representatives of a deceased person, are presumed in law to be fully apprized of the extent of their authority to act in behalf of the estate which they represent. Hence, in the case of an ordinary administrator, they are presumed to know that he has no authority, as such, to make new contracts which will bind the estate in his charge; such, for example, as contracts for the loan of money even upon the pretense that it is needed to pay the debts. A person, therefore, who, under such circumstances, advances money to an administrator acquires no right either at law or in equity as against the estate. His equity only arises in case the money advanced has in fact been applied to the payment of debts for which the estate was justly and legally bound. In such cases the creditor of the administrator will be permitted to take his place,

and will be subrogated to his rights.  But reason, as well as sound policy, requires that it should be shown by the clearest evidence that the estate has been benefited, or, in other words, that the money has been applied beneficially and in the payment of the debts."

In the case of In re Donnelly's Estate, 246 Pa. 308, 92 Atl. 306, a large sum of money belonging to the widow and surviving children of the deceased was used by the executors to redeem certain valuable property belonging to the estate from a pledge as collateral security.  Such redemption was found to be for the distinct benefit of the estate, and the court held that, inasmuch as the individual money of such widow and surviving children was used to the great advantage of the estate, it should constitute a preferred claim. This language was used by the Supreme Court of Pennsylvania in expressing its views:

"The court below based its action upon a distinct finding in this case that the use of individual funds advanced to the executors by the heirs resulted in a distinct advantage to the estate.  It may not have been necessary to go thus far, but certainly the position affords full justification for the action which was taken.  The persons who advanced these funds to the executors were not creditors of the decedent.  The deposit of their individual funds with the executors was in aid of the settlement of the estate and was for use in the protection of its assets.  In paying back this money, which was merely a temporary loan to the executors, for the benefit of the estate, no harm is done to the estate itself, nor to its creditors.  The payment is to that extent only the return of that which was advanced to the executors as an aid to the administration.  At the death of Charles Donnelly, the claims of his creditors were fixed against all the property of which he died possessed; but the rights of the creditors did not extend to or include anything which the executors might afterwards be able to borrow, for the purpose of protecting the assets, or in aid of proper administration.  The general principle that equitable assets are to be distributed equally among all the creditors, without reference to priority, is undoubted, but the funds here in question, which were temporarily placed with the executors by the heirs, constituted no part of the estate in the hands of the executors for distribution to creditors.  Therefore we feel that the court below was entirely justified in the preference which it awarded to the widow and children.  It was merely restoring to them money of their own, which had been temporarily deposited in the hands of the executors, for the purpose of enabling them to protect the assets.  This action of the heirs was undoubtedly intended to

benefit the estate and the creditors, by preventing the sacrifice of the assets; and as a matter of fact, as found by the court below, it did result in benefit. As the court below well says, in view of the proof that the creditors have gained by this transaction, and by the temporary use of funds advanced by the heirs, which did not belong to the Donnelly estate, and became no part thereof, it would be against conscience to refuse a preference in restoring these funds to the parties who advanced them."

In Thomas v. Provident Life & Trust Co., et al, 138 Fed. 348, 70 C. C. A. 488, it was held that the mortgaged relied upon had been executed by the executor without authority, but that the money loaned and secured by such mortgage was used to pay off valid debts against the estate, and that the estate was bound to repay the amount with interest, because, in good conscience, it could not accept the benefit thereof and afterwards escape liability.

It seems, therefore, upon logic and authority, and we have arrived at the conclusion, that, conceding appellant's mortgage to be valid, and we expressly refrain from so holding, the supplies furnished and money advanced were concededly in the nature of necessary expenses, except the $1,000 which was paid directly to the appellant, and had the administrators furnished such money, and it had been so used, they would have been authorized by law to deduct the same from the moneys on hand, and it would have been the duty of the lower court to fully reimburse them therefor before paying anything to the appellant. And we further think that the Mercantile Company, having furnished such supplies and money with which to operate the business in question, in good conscience, it should be allowed and permitted to assert the same rights of priority that the administrators would have possessed had they furnished the same. The theory upon which the necessary expenses of administration, including the care, management, and settlement of an estate, are first paid is that the estate must be maintained which necessarily incurs expenses, and that, to so maintain, protect and preserve the assets of such estate, inures to the benefit of the creditors who look to such assets

as their security, and certainly they harvest the same benefits when such expenses are paid by a third person as where paid directly by the administrator.

Of course a third person could not recklessly furnish unnecessary supplies or money without the approval of the court which has supervision of the estate, and afterwards successfully make such a claim. But this is not that kind of a case. The trial court expressly found that the supplies were used in the operation of the business, and the money was likewise used to pay the expenses thereof, and hence expressly approved the claims thereof, and gave them priority of payment.

From what we have said, it appears that the trial court correctly disposed of the case and rendered the only judgment which could rightly be rendered under the pertinent facts. It should, therefore, be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.