DIXON v. DAVIS et al.
No. 505.

District Court, W. D. South Carolina.
Feb. 19, 1940.

Donald Russell, of Spartanburg, S. C., for plaintiff.

Johnson & Johnson, J. W. Mansfield, and Perrin & Tinsley, all of Spartanburg, S. C., for certain defendants.

WYCHE, District Judge.

By this action the plaintiff in his capacity as receiver of a national banking association, under appointment of the Comptroller of the Currency, Section 192, 12 U.S.C.A., invokes the original jurisdiction of this Court to establish certain notes as valid claims against the estate of R. L. Bowden, deceased, or, in the event such claims be ruled as invalid, in whole or in part, against the estate proper, to fix such of said notes so declared invalid as legal and enforceable obligations on the part of all or certain of the individual beneficiaries of said estate personally profiting from the proceeds of such notes and as charges against their distributable shares in said estate, to marshal the various claims held by the receiver against the individual beneficiaries and to provide for the protection of the same in the distribution of the ratable interests of the beneficiaries in the residuum of the estate, remaining after the payment of the debts held by the receiver against the estate itself, and for such other general equitable relief as may be appropriate in the premises. The character of the plaintiff, suing to enforce obligations incident to the winding up of a national bank, brings the action within the scope of this Court's limited statutory jurisdiction. Section 41, subdivisions (1) and (16), 28 U.S.C.A.; Studebaker Corp. v. First National Bank, D.C.S.C.1926, 10 F.2d 590; Koenig v. Oswald, 8 Cir., 1936, 82 F.2d 85; Willcox v. Goess, D.C.N.Y.1936, 16 F.Supp. 350; Citizens National Bank v. Turner, D.C.Texas 1936, 14 F.Supp. 495.

The parties defendant include the administratrix cum testamento annexo of the estate of R. L. Bowden, deceased, as well as all beneficiaries of the will of the said R. L. Bowden and all assignees, mortgagees and judgment creditors of such individual beneficiaries. All of said parties have been properly served and are before the Court. The defendants Jesse Cleveland and G. S. Coffin as executor of the estate of Mrs. M. H. Coffin, who were made parties defendant because they along with John A. Law, Jr., as receiver of the Merchants and Farmers Bank of Spartanburg, held judgments against M. E. Bowden entered prior to the commencement of this proceeding, entered no appearance herein and defaulted and a decree by default was taken against them. Their rights, though, will not be adversely affected by such action, since, under the well settled doctrine of equitable conversion stated in Mattison v. Stone, 1911, 90 S.C. 146, 72 S. E. 991, the interest of M. E. Bowden in the properties of the estate of R. L. Bowden

constituted personalty, the judgments held by all such defendants did not constitute liens against the said interest of M. E. Bowden therein. Section 744, Code of Civil Procedure of South Carolina, 1932. And this action only involves the properties of the estate; the rights of all mortgage and judgment creditors in and against any properties owned personally by M. E. Bowden are unaffected by this action.

On July 5, 1915, R. L. Bowden, a resident of Spartanburg County, South Carolina, died, leaving of force a will which in due course was proved in common form before the Probate Court of said Spartanburg County. Such will nominated as the executors thereof M. E. Bowden and J. M. Bowden, both of whom duly qualified. Upon the death of J. M. Bowden on May 9, 1922, M. E. Bowden continued as the sole executor of the estate until his death in March, 1936. With the death of M. E. Bowden, Agnes Bowden Davis was appointed administratrix cum testamento annexo of the estate by the Probate Court of Spartanburg County and she is now acting as such administratrix.

By the terms of his will, R. L. Bowden bequeathed and devised all his estate, after the payment of his debts, to his sons, M. E. Bowden, J. M. Bowden and Otis M. Bowden, to his daughter, Agnes Bowden Davis, and to the children of a deceased child, May H. (Mrs. R. E.) McFadden, and George B. Hodges. Each child was given a one-fifth interest and the grandchildren, as the representatives of their deceased parent, shared a fifth interest between them. Thereafter J. M. Bowden died, leaving a will, which was duly admitted to probate and under which his sole distributees were his four daughters, the defendants, Alice (Mrs. Frank) Williams, Jennie McCall Blanchard (who was Mrs. D. W. McCall at the time of the commencement of this action, but has during its pendency become by marriage Jennie McCall Blanchard), Agnes Lamb, and Annie (Mrs. E. F.) Carson, who succeeded in equal shares to the one-fifth interest of their late father in the estate of R. L. Bowden. Otis M. Bowden died intestate in March, 1923, leaving a widow, Mary T. (Mrs. Otis M.) Bowden, without children. Under the intestacy laws of this State, Otis M. Bowden's interest in his father's estate passed one-half to his widow and the other half to his surviving brother and sister and to the children of his deceased brother and sister. Section 8906, Civil Code of South Carolina, 1932. By reason of Otis M. Bowden's death, Mrs. Mary T. Bowden inherited a one-tenth interest in the estate of R. L. Bowden, the interests of M. E. Bowden and Agnes Bowden Davis were increased from one-fifth to nine-fortieths, the interests of May H. McFadden and George B. Hodges became nine-eightieths, and Alice Williams, Agnes Lamb, Annie Carson and Jennie McCall Blanchard acquired each a 9/160 interest. Thereafter on March 15, 1936, M. E. Bowden died leaving a will, which was duly admitted to probate and under which Kate C. (Mrs. M. E.) Bowden, the testator's widow, was given all the estate of said M. E. Bowden. Kate C. Bowden, accordingly, has succeeded to M. E. Bowden's 9/40 interest in this estate. The present beneficiaries of the estate, with their respective interest therein, are as follows:

| | | |
|---|---|---|
| 1. | Agnes Bowden Davis | 36/160ths. |
| 2. | Kate C. Bowden | 36/160ths. |
| 3. | Mary T. Bowden | 16/160ths. |
| 4. | May H. McFadden | 18/160ths. |
| 5. | George B. Hodges | 18/160ths. |
| 6. | Jennie McCall Blanchard | 9/160ths. |
| 7. | Alice Williams | 9/160ths. |
| 8. | Annie Carson | 9/160ths. |
| 9. | Agnes Lamb | 9/160ths. |

Various of these beneficiaries have, at one time or another, executed mortgages over their interests in the estate. While these mortgages cannot be upheld as such because the interests of the beneficiaries under the will involved here were converted into personalty, such mortgages will be upheld as equitable assignments. Walker v. Killian, 1902, 62 S.C. 482, 40 S.E. 887. Some of these mortgages have been duly recorded in the office of the Register of Mesne Conveyance of Spartanburg County, South Carolina; and others are unrecorded. J. M. Bowden, under date of April 19, 1916, executed to M. E. Bowden, to secure the payment of his promissory note, due twelve months from date, in the amount of $1,000, his mortgage deed in and over his interest in the R. M. Bowden homeplace, located on the corner of East Main and North Converse Streets. This mortgage is recorded in the office of the Register of Mesne Conveyance for Spartanburg County in Mortgage Book 97, at page 57, et seq. After its execution, such mortgage and the note securing same were assigned of record to the Carolina Savings Bank, which in turn assigned same to the

plaintiff in this action. Prior to the commencement of the instant action, suit for the foreclosure of this mortgage was filed in the Court of Common Pleas for Spartanburg County and resulted in a decree of foreclosure and sale, the execution of which has been delayed by this proceeding. Again, on November 10, 1920, J. M. Bowden executed his mortgage deed over the same property to the Enoree Presbytery of South Carolina, in order to secure the payment of his promissory note of even date therewith in the amount of $250. This mortgage was recorded in the office of Register of Mesne Conveyance for Spartanburg County in Mortgage Book 121 at page 138. This mortgage, and the debt securing the same, have been assigned to the plaintiff.

George B. Hodges, on April 16, 1928, executed to M. E. Bowden a mortgage deed over his interest in the R. L. Bowden estate to secure the payment of several notes aggregating $9,175. Such mortgage was recorded in the office of Register of Mesne Conveyance for Spartanburg County in Mortgage Book 168, at page 229. The plaintiff, as the holder of the notes secured by this mortgage, is entitled to the benefit of this mortgage. On January 28, 1929, George B. Hodges executed to M. E. Bowden another mortgage over his interest in the R. L. Bowden estate. This mortgage secured the payment of various notes aggregating in principal amount $10,858, which represented a duplication of the obligations secured by the earlier mortgage as well as included the accumulation of interest and subsequent advances. This second mortgage, to which the plaintiff has succeeded by virtue of his ownership of the notes secured thereby, is recorded in the office of the Register of Mesne Conveyance for Spartanburg County in Mortgage Book 185 at page 77. A third duplicating mortgage, dated November 26, 1929, and executed by George B. Hodges to M. E. Bowden as cashier of the Central National Bank to secure the payment of notes aggregating in principal amount $12,400, was recorded in Mortgage Book 191 at page 67, in the office of the Register of Mesne Conveyance for Spartanburg County. This third mortgage inures to the benefit of the plaintiff who is the holder of the notes secured thereby.

On August 15, 1933, M. E. Bowden executed his mortgage deed in and over all his interest in the R. L. Bowden estate to H. M. Cleveland, the receiver of the Central National Bank and the Employees Savings Bank. The respective debts secured thereby were a note of even date to H. M. Cleveland in the amount of $12,006.44, carrying interest at the rate of seven per cent. per annum, several notes in favor of the receiver of the Central National Bank in aggregate amount of $29,494.63, with interest at the rate of eight per cent. per annum from January 1, 1932, and two notes to the Employees Savings Bank in the combined principal amount of $3,962.55, with interest from July 1, 1933, at the rate of eight per cent. per annum. This mortgage is recorded in the office of the Register of Mesne Conveyance for Spartanburg County in Mortgage Book 184 at page 656, et seq. It is somewhat in doubt whether dower on this mortgage was renounced by the wife of the mortgagor. Since, under the will of R. L. Bowden, the interest of M. E. Bowden in the estate was converted into personalty (Walker v. Killian, 1902, 62 S.C. 482, 40 S.E. 887), no right of dower ever attached in favor of the wife of M. E. Bowden in the property hereinafter described, and this issue is thus immaterial. Tiffany, Real Property (1920) vol: 1, page 742; Berrien v. Berrien, 1837, 4 N.J.Eq. 37.

May H. McFadden, by two mortgages stated to rank equal and dated November 30, 1935, executed in favor of the receiver of the Central National Bank and the Employees Savings Bank, encumbered her interest in the estate of R. L. Bowden. These two mortgages are recorded in the office of the Register of Mesne Conveyance for Spartanburg County in Mortgage Books 209 at page 397, and 193 at page 298, respectively. The debt secured by the mortgage to the plaintiff receiver is a note in the original principal amount of $3,300, dated July 1, 1919, and providing for interest from date at rate of eight per cent. per annum. The debt embraced in the mortgage to the Employees Savings Bank is represented by a note in the principal amount of $4114.09, with interest from December 15, 1932, at the rate of eight per cent. per annum.

By the terms of R. L. Bowden's will, his executors were authorized "to dispose of his property, (whether real or personal) at either public or private sale when in their judgment it can be done to the best interest of my estate." And the executors, after paying the inconsiderable debts of the testator, distributed among the beneficiaries

of the will all personal property of the estate. At various times between 1915 and 1921, the executors sold certain of the testator's real estate holdings and made distribution of the proceeds among the beneficiaries of the estate. Since 1921, the property of the estate has consisted of three tracts or lots of land, all located in the City of Spartanburg. The most valuable of the three lots is situated on the corner of East Main and Converse Streets, fronting on East Main Street approximately 113 .feet and on Converse Street about 136 feet. On this lot is located a filling station. The second lot, which is 55' x 102', is vacant and is located on the corner of Dunbar and Converse Streets. The last lot, which fronts on North Converse Street (55' x 110'), has ten-room frame house thereon.

The executors have, during the pendency of the estate, made distributions among the beneficiaries of the estate, from the rents accruing to the estate. As a consequence of this practice, the surviving executor M. E. Bowden was unable out of the rents of the estate, to pay taxes and general maintenance expenses due on the estate's properties. The executor, in order to meet these expenses and to make certain advances to the beneficiaries, executed at various times to the Central National Bank on behalf of the estate six demand notes, aggregating in principal amount on January 1, 1932, $25,200. Interest on these notes at the rate of eight per cent. (the contracted rate) was paid to January 1, 1932. According to an audit of the executor's bank account, $8,228.71 of the proceeds of these notes were used to pay taxes, insurance and maintenance items on the estate's real estate. In addition, a portion of such notes represented the inclusion of accrued interest. The proportion of interest so included to be allocated to that part of the notes used in payment of taxes, insurance and repairs amounts to $489.91. The balance of these notes was distributed among the various beneficiaries.

■■ It has been urged by the defendants that the executor was without authority under the will to borrow monies. If it be conceded that this position is tenable, it does not follow that the plaintiff is remediless against the estate of R. L. Bowden. Without dissent the authorities affirm that the plaintiff, to the extent that the proceeds of his loans were used to pay proper debts or expenses of the estate, is entitled to be subrogated to the right the executor would enjoy for reimbursement of such expenditures out of the estate, and, by virtue of this right of subrogation, could recover directly of the estate. The principle upon which this conclusion is predicated is summarized in 24 Corpus Juris, 71, as follows: "While a person who lends or advances money to an executor or administrator upon a promise by note or other contract acquires no right at law or in equity against the estate, unless the money has in fact been applied to pay debts or otherwise benefit the estate, he will in such case be permitted to take the representative's place and be subrogated to his right of reimbursement from the estate."

In 35 A.L.R. 50, preliminary to an exhaustive review of the decisions, the annotator expresses the same rule in these words: "The general rule seems to be that a person who has loaned money to an executor or administrator, which is used for the benefit of the estate, while having no legal claim against the representative personally, is, on equitable principles, entitled to be subrogated to the right of the representative to reimbursement from the estate for his expenditures for its benefit."

The leading case in this connection is Thomas v. Provident Life & Trust Co., 9 Cir., 1905, 138 F. 348, certiorari denied 200 U.S. 618, 26 S.Ct. 755, 50 L.Ed. 622. Executors, without testamentary authority, executed a mortgage over real property of the estate to secure funds to discharge legacies and expenses of administration. The heirs sought to avoid the mortgage because of the want of power in the executors to mortgage the real estate. In sustaining the mortgage against such attack, the Court said (138 F. page 349): "But even if the mortgage were not authorized by the terms of the will, the estate, having received the benefit of the money, ought, in equity, to repay it, with interest. Said the Supreme Court of Iowa in such a case: 'The Estate has received the benefit of the money which was advanced by the defendant. It ought, in good conscience, to repay it, with legal interest.' Deery v. Hamilton, 41 Iowa 16."

Again, in Yokum v. Yokum, 1931, 110 W.Va. 221, 157 S.E. 579, page 581, the Court, speaking of a loan made to executors without testamentary authority, said: "It has been the settled rule for many years that the right of subrogation would be extended to executors who, having exhausted the personal estate in payment of

debts, then paid out of their personal funds other debts of the testator or of the estate. Gaw v. Huffman (1855) 12 Grat. 628, 53 Va. [628] (binding on us); Earle v. Coberly, 65 W.Va. 163, 166, 64 S.E. 628, 17 Ann. Cas. 479; Woerner on Administration (3d Ed.) § 469, p. 1629; 11 R.C.L. p. 221. It may also be taken as generally established that when money is loaned to an executor to be applied on the debts of the decedent or on the expenses of administration, and the loan is in fact so expended, the lender will be subrogated to the rights of the executor."

This doctrine has also been recognized in the decisions of the South Carolina courts. In Cater v. Eveleigh, 1809, 4 Desaus. 19, 6 Am.Dec. 596, a trustee, vested with no authority under the trust instrument to create a debt against the trust estate, purchased a cotton gin for the use of the trust's plantation and executed his personal note in payment therefor. When sued personally on his note, the trustee sought refuge in the insolvent debtor's act. Thereupon, the creditor sued the trust estate itself for the purchase price of the gin. The action was upheld, the Court stating: "As the gin was bought for the trust estate, as it belongs to it, and it has not been paid for, it is but just that the complainant's demand should be satisfied out of the estate, and it is [so] ordered."

In Montgomery v. Eveleigh, 1826, 1 McCord Eq. 267, a trustee, without authority under the trust instrument, purchased on credit certain corn for the upkeep of slaves by the trust. The indebtedness thus created was sustained against the trust, the Court summing up its conclusions in these words (1 McCord Eq. page 269): "On considering the circumstances of this case, I am of opinion that the trust estate is liable for this debt. It would be a fraud on the public to protect a trust estate from such a demand. It has been repeatedly settled that trust estates are liable for debts contracted for their use, and indeed for their existence, as in this case."

In Douglas v. Fraser, 1827, 2 McCord Eq. 105, an executor contracted debts for "goods, wares, and merchandise" for the benefit of the estate. Suit against the executor personally on such debts resulted in executions with nulla bona returns. Action on the debts was then commenced against the estate. Though it remanded the proceedings for failure to join the beneficiaries of the estate as parties defendant, the Court stated by way of dictum that the creditors were entitled to recover for such of their debts as were incurred "in behalf of the trust estate."

In Henshaw v. Robertson, 1831, Bailey Eq. 311, the rule applied was that to the extent the fiduciary is in advance to the estate, after giving effect to the loans secured by him for the benefit of the estate, the creditors so extending such credit to fiduciary are entitled to a claim against the estate by subrogation to the rights of the fiduciary. See, also, James v. Mayrant, 1815, 4 Desaus. 591, 6 Am.Dec. 630; De Concillio v. Brownrigg, 1892, 51 N.J.Eq. 532, 25 A. 383; Perez v. Gil's Estate, 1924, 29 N.M. 313, 323, 222 P. 907, 35 A.L.R. 43; Sprague v. Betz, 1906, 44 Wash. 650, 656, 87 P. 916, 918; Wood v. American National Bank, 1932, 125 Cal.App. 248, 14 P.2d 110; Hudson v. Union & Mercantile Trust Co., 1921, 148 Ark. 249, 230 S.W. 281; Hewitt v. Beattie, 1927, 106 Conn. 602, 138 A. 795. In both Guerry v. Capers, 1830, Bailey Eq. 159, and Manigault v. Holmes, 1831, Bailey Eq. 283, the executor had squandered the estate and was entitled to no reimbursement from the estate; needless to add, the right of subrogation would not be available to one lending to the executor without testamentary authority if the proceeds of the loans were lost through the fiduciary's own derelictions. Neither of those cases, though, is applicable here.

Moreover, that part of the proceeds of plaintiff's notes, which was used in the payment of taxes due on the estate's properties, is covered by Section 2605, Civil Code of South Carolina, 1932, which declares that an executor is personally liable for taxes assessed against the properties of the estate and empowers the executor to "retain" from the proceeds of sale of the estate's property an amount sufficient to reimburse him for taxes. See Pollitzer v. Beinkempen, 1907, 76 S.C. 517, 57 S.E. 475; Carter v. Wroten, 1938, 187 S.C. 432, 198 S.E. 13, 119 A.L.R. 379. This right of the executor to reimbursement would pass by subrogation to the bank furnishing the fiduciary with the funds to discharge the statutory duty. Hudson v. Union & Mercantile Trust Co., supra; compare Rose v. W. B. Worthen Co., 1932, 186 Ark. 205, 53 S.W.2d 15, 85 A.L.R. 212.

It accordingly follows that, to the extent of $8,897.44, the notes held by the plaintiff against the estate must be upheld.

Upon the notes to that extent the plaintiff will be entitled to interest and attorney's fees in accordance with the terms of the note; that is, plaintiff shall receive judgment against the estate of R. L. Bowden for the sum of $8,897.44, together with interest thereon from January 1, 1932, at the rate of 8% per annum until paid and with 10% of the combined principal and interest by way of attorney's fees.

The balance of the proceeds of plaintiff's notes apparently was expended in uneven advances to the various beneficiaries of the estate. The amount of such advances varied from $5,980, to the J. M. Bowden estate, down to $411.67, made George B. Hodges. For the advances so made the executor creating plaintiff's notes ordinarily would be given a charge against the share of the beneficiary profiting from such advance. In 21 Am.Juris. 670, it is stated: "The general rule is that an executor or administrator has no right of recovery against the general estate for an advancement made without testamentary or statutory authority to a member of the defendant's family, although, if he makes such an advancement, he has a valid claim against the person to whom the advancement was made and a charge on the share of that person in the estate."

Again, in 24 Corpus Juris, 483, the same doctrine is expressed thus: "Where, however, the representative makes advances or disbursements from his own funds for the benefit of legatees or distributees, he becomes subrogated to their rights, and is entitled to credit therefor, as a charge against their legacies or distributive shares, upon final settlement of the estate, or after the legacy or distributive share is due he may reimburse himself from funds in his hands subject to its payment."

In Re Stewart's Estate, 1934, 145 Or. 460, 28 P.2d 642, 644, 91 A.L.R. 818, 822, the Court said: "Where disbursements are made from the representative's own funds for the benefit of a legatee, the administrator is entitled to a credit therefor as a charge against the heir's share."

If this right inured in favor of the executor, the plaintiff, who furnished the monies for such advances, would be subrogated thereto. In Thomas v. Provident Life & Trust Co., supra, advances to beneficiaries were involved and the right of subrogation was upheld. This right of the plaintiff, though, is earnestly challenged; and it appears impractical from the plaintiff's viewpoint seriously to demand this right. His various demands, including those owned by him in common with other creditors, against the individual distributees will more than consume the interests of such distributees in the estate and a recovery of additional claims against such beneficiaries would constitute an empty victory. For this reason it seems the sensible course to provide for judgments in favor of the plaintiff in this action against the individual beneficiaries of the estate upon their individual debts to the plaintiff and provide for the protection of such judgments in the distribution of the estate herein. The various obligations held by the plaintiff against the defendants individually have been introduced in evidence and judgments on such obligations may properly be entered in this proceeding.

Two of the individual beneficiaries, against whom plaintiff will recover judgments herein, have demanded a real estate homestead out of their share of the estate. These are Mrs. Jennie McCall Blanchard and Mrs. Alice Williams. While both have living husbands, it is their contention that they may claim homestead under the proviso incorporated in Section 28, Article 3, S.C. Constitution of 1895: "Provided, That in case any woman having a separate estate shall be married to the head of a family who has not of his own sufficient property to constitute a homestead as hereinbefore provided, said married woman shall be entitled to a like exemption as provided for the head of the family." It would seem that both defendants may have homestead under this provision. The plaintiff, however, urges that the homestead so given be limited to a homestead in personalty on the ground that the terms of the will of R. L. Bowden amounted to an equitable conversion of the testator's real estate into personalty. Postell v. Postell's Ex'rs, 1790, 1 Desaus. 173; North v. Valk, 1838, Dud.Eq. 212; Wilkins v. Taylor, 1847, 8 Rich.Eq. 291; Mathis v. Guffin, 1855, 8 Rich.Eq. 79; Walker v. Killian, 1902, 62 S.C. 482, 40 S.E. 887; Land Title & Trust Co. v. Tax Commission, 1925, 131 S.C. 192, 126 S.E. 189, 42 A.L.R. 417. He also questions the power of the Court to provide a homestead out of an undivided interest in real estate, even if the said defendants be upheld in their position. Cf. Nance v. Hill, 1887, 26 S.C. 227, 1 S.E. 897. The allowance of a real estate homestead would contribute to the early disposition of this cause and in the interest of expedition the allowance of

a homestead in real estate will be allowed these two defendants, though it is clear and is so hereby adjudged that the right of homestead herein is legally limited to a homestead in personalty. None of the other defendants, except Mrs. Otis Bowden, is entitled to homestead.

Appropriate decree filed herewith.